**James Joseph WELSH, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 25436.**

United States Court of Appeals
Fifth Circuit.

Nov. 26, 1968.

---

6. Int.Rev.Code of 1939, § 115, (26 U.S.C. 1952 ed., Sec. 115).

7. 26 U.S.C. 1964 ed., Sec. 302(b) (1).

John C. Pennington, Atlanta, Ga., for appellant.

Vernol R. Jansen, Jr., U. S. Atty., Don Conway, Asst. U. S. Atty., Mobile, Ala., for appellee.

Before JOHN R. BROWN, Chief Judge, and RIVES and McENTEE,* Circuit Judges.

RIVES, Circuit Judge:

Welsh was convicted of unlawfully having in his possession certain blank checks contained in a letter addressed to another person and stolen from the mail, knowing the same to have been stolen.[1]

He made some pretense of an alibi, but the only possible doubt of his guilt related to his mental competency.[2] Notwithstanding that there were strong indications that insanity was feigned, and despite the careful and patient rulings of the able trial Judge, we must reluctantly hold that Welsh and his appointed counsel were not afforded the opportunity required by law to establish a reasonable doubt of his sanity, and must reverse and remand for another trial.

At the outset, Welsh moved for and the Government concurred in a mental competency hearing before trial pursuant to 18 U.S.C. § 4244. The district court appointed Dr. John S. Ewing, Jr., of Mobile, Alabama, the place of the trial, to examine Welsh and to report to the court concerning his mental condition.[3] After

---

* Of the First Circuit, sitting by designation.

1. In violation of the following part of Tit. 18 U.S.C. § 1708:
   "Whoever * * * unlawfully has in his possession, any letter * * *, or any article or thing contained therein, which has been so stolen [that is, from an authorized depository for mail] * * *, knowing the same to have been stolen * * *—
   "Shall be fined not more than $2,000 or imprisoned not more than five years, or both."

2. He was arrested while trying to cash one of the stolen checks. In the Judge's chambers (and out of the jury presence), his claim went no further than that the government witness Williams stole the checks and gave them to him (R. 131).

3. The Judge did not make Dr. Ewing's report available to counsel, and it was not a part of the record on appeal as originally filed. At this Court's request on oral argument, counsel on both sides agreed to obtain the report and to stipulate that it be included in the record. After stating the information of past history, etc. obtained from Welsh, Dr. Ewing's report continued:
   "MENTAL STATUS EXAMINATION: The patient was neatly dressed and cooperative to the best of his ability. His speech was disjointed, blocked incoherent and at times irrelevant. On two occasions during the interview he wept. He has paranoid delusions of persecution and delusions of death. He experiences auditory hallucinations. Judgment is grossly impaired.

considering Dr. Ewing's report, the district court committed Welsh to the U. S. Medical Center for Federal Prisoners at Springfield, Missouri, for examination and report as to his mental condition. Dr. Kenneth H. Ash, the Staff Psychiatrist, filed a three-page report of his psychiatric examination of Welsh. That report detailed Welsh's past history. He had been reared in a Catholic orphanage from age 5 to age 14, when he was sent to Father Flannagan's Boys' Town. Welsh had related that he was the only one that Father Flannagan ever threw out; that shortly thereafter in 1941 he stole an automobile but escaped detection. Since then he has been in and out of penitentiaries, and has been in psychiatric hospitals on several occasions with diagnoses varying from sociopathic personality to chronic schizophrenic reaction. Dr. Ash reported that on his examination he observed "no evidence of a thinking disorder or other secondary symptoms associated with psychoses. His sensorium was clear and his intelligence would seem to be approximately normal."

The psychiatric staff made a separate report, concluding that, "There is no evidence of any affective or thinking disorders of a psychotic proportion and it was the unanimous opinion of the Staff that the findings present as a result of our evaluation support adjudication of competency."

Dr. Ash's report and the staff report were forwarded to the court by a letter from Dr. Pasquale J. Ciccone, Director of the Springfield Medical Center, in which he stated: "It is our opinion that the reported findings support an adjudication by the Court that subject now has a rational as well as a factual understanding of the proceedings against him and is able to assist rationally in his defense."

On September 28, 1967, about two weeks after the court received the Springfield reports, Welsh was arraigned, pleaded not guilty, and the case was set for trial on October 9. When the case was called for trial, Welsh's court-appointed counsel moved for a continuance, stating:

"He is obviously sick. He looks like to me he is sick, and based on what this gentleman here has told me, and further the remarks made out in the courtroom when the defendant was brought in—he says he has another witness and I have asked him to give me his name and I can't make heads or tails out of what he is saying. I asked Mr. Cummings who knew the man in January in Texas to talk to him to see if he could decide what he was saying—I couldn't communicate with him and Mr. Cummings couldn't either. And I would like for him to tell the Court."

After hearing from Cummings, from the United States Attorney, and from Welsh's counsel, the district court denied the motion for continuance.

■■ The motion for continuance invoked the sound discretion of the trial court.[4] Under all of the circumstances, including the recent finding at the Springfield Medical Center that Welsh was mentally competent to assist in his own defense, the district court acted well within the bounds of its discretion in denying the motion for continuance.

On October 2, a week before the trial, Welsh's counsel, acting under the pertinent rule,[5] moved the court to order sub-

---

"DIAGNOSIS: Schizophrenic Reaction, Chronic Paranoid Type.
"RECOMMENDATIONS: It is respectfully recommended that he be admitted to a hospital equipped for the treatment of the mentally ill."
Welsh's examination by Dr. Ewing occurred about six months after the date of the alleged crime.

4. See United States v. Knohl, 2 Cir. 1967, 379 F.2d 427, 434, and cases there collected.

5. Rule 17(b), Fed.R.Crim.P.:
"(b) *Defendants Unable to Pay.* The court shall order at any time that a subpoena be issued for service on a named witness upon an *ex parte* application of a defendant upon a satis-

poenas issued for five witnesses. The court complied as to one, the alibi witness Mr. Cummings, but refused compliance as to the other four. As to two of the requested witnesses, we think the court's refusal was clearly proper, and we comment briefly on the other two.

Paragraph 3 of the motion asked for a subpoena to Dr. Ewing as follows:

"3. Doctor John S. Ewing, Jr., 1456 Springhill Avenue, Mobile, Alabama, who will testify that the Defendant was mentally incompetent at the time he was alleged to have committed the crime for which he was charged."

In refusing that request, the court said:

"With reference to paragraph # 3, the report to the Court by Dr. Ewing does not indicate he will testify the defendant was mentally incompetent at the time * * * alleged * * * committed the crime, and the Court denies this request on the basis of lack of probable cause that the doctor would testify as petitioner claims."

■ We hold that the district court erred in refusing to order that a subpoena be issued for service on Dr. Ewing. Admittedly, Welsh was unable to pay the fees of the witness. The only other requirement of the present Rule 17(b), Fed.R.Crim.P., quoted supra note 4, is "a satisfactory showing * * * that the presence of the witness is necessary to an adequate defense." The showing must be "satisfactory" to the district court, which means that the district court exercises a broad discretion in granting or denying a motion for the issuance of a subpoena made by a defendant financially unable to pay the fees of the witness.[6] The abuse of process so often encountered emphasizes the necessity for such discretion. Clearly, however, the discretion is not absolute, but is a sound judicial discretion subject to review on appeal.[7]

■■ The breadth of the discretion to be exercised by the trial court under Rule 17(b) is considerably narrowed by two constitutional rights of the defendant: (1) the Sixth Amendment right "to have compulsory process for obtaining witnesses in his favor";[8] and (2) the Fifth Amendment right to protection against unreasonable discrimination which means that, as between those financially able and those financially unable to pay the fees of the witness, there should be no more discrimination than is necessary to protect against abuse of process.[9] We agree with the test prescribed by the D.C. Circuit that,

"* * * if the accused avers facts which, if true, would be relevant to any issue in the case, the requests for subpoenas must be granted, unless the averments are inherently incredible on their face, or unless the Government shows, either by introducing evidence or from matters already of record, that the averments are untrue or that the request is otherwise frivolous."

Greenwell v. United States, 1963, 317 F. 2d 108, 110.[10] That test places the bur-

factory showing that the defendant is financially unable to pay the fees of the witness and that the presence of the witness is necessary to an adequate defense. If the court orders the subpoena to be issued the costs incurred by the process and the fees of the witness so supoenaed shall be paid in the same manner in which similar costs and fees are paid in case of a witness subpoenaed in behalf of the government."

6. See Thompson v. United States, 5 Cir. 1967, 372 F.2d 826, 828.

7. See Greenwell v. United States, 1963, 115 U.S.App.D.C. 44, 317 F.2d 108, and especially the dissenting opinion of Mr. Justice Reed at p. 113.

8. See Taylor v. United States, 5 Cir. 1964, 329 F.2d 384, 386.

9. See Coppedge v. United States, 1962, 369 U.S. 438, 447, 82 S.Ct. 917, 8 L.Ed.2d 21; Greenwell v. United States, D.C. Cir. 1963, supra note 8; Washington v. Clemmer, 1964, 119 U.S.App.D.C. 216, 339 F.2d 715, 718.

10. Both this Court in Taylor v. United States, supra note 9, and the D.C. Circuit in Greenwell v. United States, supra note 8, were dealing with Rule 17(b) before the 1966 amendment. As the notes

den of showing frivolity or abuse of process on the Government, where it properly belongs.[11]

■ Applying that test, Welsh was clearly entitled to a subpoena for Dr. Ewing. The witness resided in Mobile, the place of trial. Welsh asserted that Dr. Ewing "will testify that the defendant was mentally incompetent at the time he was alleged to have committed the crime for which he was charged." Dr. Ewing's report to the court gave his diagnosis of Welsh as of June 14, 1967, six months after the date of the alleged crime as "Schizophrenic Reaction, Chronic Paranoid Type." Clearly, no sufficient showing was made that Dr. Ewing's testimony would not be relevant or probative of Welsh's incompetency at the time of the commission of the alleged crime.

Paragraph 5 of the motion described the witness requested as follows:

"5. A Subpoena Duces Tecum to the Medical Director of the Lima State Hospital, Lima, Ohio and to bring with him the complete medical history of the Defendant, James Joseph Welsh. This individual can testify that the Defendant was suffering from a mental condition in 1948 and can relate his past mental history."

After some of the Court's personnel had talked by telephone with the Records Clerk of the Lima State Hospital, and had learned that Welsh had been in that hospital on two occasions, the first from July 19, 1948 to July 29, 1949, and the second from January 19, 1953 to March 6, 1953, the court denied the request, "on the basis of lack of probable cause that the records would sustain the defendant's contention that he was mentally incompetent at the time the offense with which he is presently charged was committed, to wit, January 14, 1967."

■ The refusal of the district court to make the records of the Lima State Hospital available to Welsh was based in part also on the ground that, "It was not feasible to get the records here for trial during this week." We need not rule separately on whether or not in that refusal the district court committed reversible error. It is enough to say that on a re-trial those records should be made available to Welsh, either by stipulation or by subpoena duces tecum.

Upon trial the only psychiatric evidence which Welsh's appointed counsel could introduce was the reports from the Medical Center at Springfield, Missouri, which were of extremely doubtful value to the defendant.

Nonetheless, Welsh's counsel argued the defense of insanity to the jury as best he could. He stressed particularly the unreasonableness of Welsh's conduct in confiding in the Government witness Williams, who was a total stranger to him.

"I urge you that this man is mentally sick because what person—the most hardened criminal, as this man would have you to believe, would go up to a total stranger in an unfamiliar city and say, 'Look, friend, here are some checks that I stole, let's go out and cash them at the bank.'"

On behalf of the Government, the Assistant United States Attorney argued, inter alia, the effect of a finding of not guilty by reason of insanity, as follows:

"Over in State Court it might be a little different, but here when you find a man not guilty by reason of insanity —bye, bye, he is gone. He is free. No commitment. He doesn't go off to a mental institution like he does over in the State Court. He is free." [12]

of the Advisory Committee indicate, that amendment substantially liberalized the rule in favor of the defendant financially unable to pay the fees of the witness.

11. Coppedge v. United States, supra, 369 U.S. at 447, 448, 82 S.Ct. 917.

12. While there was no objection, that argument may well have exceeded the bounds of propriety and perhaps should be noticed under Rule 52(b), Fed.R.Crim. P. In view of our disposition of this case, we need not rule definitely on that question.

Considered in the entire setting of this case, we conclude that Welsh's counsel should be afforded a better opportunity to develop the evidence as to Welsh's mental competency at the time of the commission of the alleged offense. More specifically, we hold that the court erred in refusing to order Dr. Ewing subpoenaed. For that error, the judgment is reversed and the case remanded.[13]

Reversed and remanded.

---

13. Since the alibi evidence is so clearly inapplicable to the offense charged, the objections to parts of the witness Cummings' testimony have not been discussed.

Without further ado, we express the opinion that the court did not err in its rulings on those objections.