**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Billy Ross MOUDY, Defendant-Appellant.**

**No. 71–3297.**

United States Court of Appeals, Fifth Circuit.

June 22, 1972.

Kirk Patton, Texarkana, Tex. (Court Appointed), for defendant-appellant.

Roby Hadden, U. S. Atty., Tyler, Tex., J. C. Hawthorn, Asst. U. S. Atty., Beaumont, Tex., for plaintiff-appellee.

Before AINSWORTH, GODBOLD and MORGAN, Circuit Judges.

GODBOLD, Circuit Judge:

Convicted of escape from the Federal Correctional Institution in Texarkana, Texas, appellant claims reversible error in admission of testimony of a psychiatrist who had examined him under 18 U.S.C. § 4244 and in refusal of subpoenas requested by him under Fed.R. Crim.P. 17(b). We reverse on the subpoena point.

Prior to trial appellant's counsel moved under § 4244 to have him examined to determine his competency to stand trial. The court granted the motion and on its own ordered that appellant be examined to determine also whether he was sane at the time he escaped.[1] Examinations directed to both issues were conducted at the Federal Medical Center in Springfield, Missouri, and on the basis of a psychiatrist's report showing appellant to be competent to stand trial the court, without a formal order, determined appellant competent to go to trial.

On October 5, 1971, after the § 4244 examination and appellant's return to custody, appellant's counsel moved pursuant to Fed.R.Crim.P. 17(b)[2] for the

---

1. The escape is undisputed.

2. "*Defendants Unable to Pay.* The court shall order at any time that a subpoena be issued for service on a named witness upon an *ex parte* application of a defendant upon a satisfactory showing that the defendant is financially unable to pay the fees of the witness and that the pres-

ence of the witness is necessary to an adequate defense. If the court orders the subpoena to be issued the costs incurred by the process and the fees of the witness so subpoenaed shall be paid in the same manner in which similar costs and fees are paid in case of a witness subpoenaed in behalf of the government."

issuance of a subpoena commanding the presence at trial in Texarkana of Dr. Joseph F. Alderete, Chief Medical Officer, Bureau of Prisons, Atlanta, Georgia. No facts were alleged or efforts made to show the need for the doctor's presence other than recitation of the conclusory statement that "said witness is necessary to an adequate defense."[3] In a written order, the court denied the motion, adding that it was not opposed to deposing Dr. Alderete or having appellant examined by a local psychiatrist.

Subsequently, on the government's motion, Dr. Luther White, a psychiatrist of Texarkana, examined appellant. On October 27, 1971 the court issued a subpoena for Dr. White, at the defense's request, which request was supported by the averment that Dr. White would testify concerning appellant's sanity at the time of the offense.

On November 1, 1971, with trial set for the following day, appellant by his counsel requested subpoenas for five more persons. Three of them were laymen, residents of Texarkana, who, it was averred, would testify as to overt acts committed by appellant immediately prior to his escape that would show his insanity at that time. The fourth was a Ringgold, Louisiana high school principal who recently had written a letter on appellant's behalf to the parole board. The last was Dr. Robert J. Murney, Clinical Psychologist, Federal Medical Center, Springfield, Missouri, who, it was averred, had recently examined appellant and would testify concerning his sanity at the time of the offense charged. The court granted subpoenas for the three Texarkana residents but denied the request to command the presence of Dr. Murney and the other nonresident witness.

At trial the court admitted over appellant's objection the testimony of Dr. H.

Wayne Glotfelty, a forensic psychiatrist at the Springfield Federal Medical Center who had examined appellant in April, 1971 pursuant to the court's order, to the effect that appellant was sane at the time of the offense. The defense called Dr. White. He was not a forensic psychiatrist and was unsure of the legal definition of insanity, but gave as his opinion that it was possible that appellant was insane at the time of the offense. Through this witness appellant introduced into evidence a report of a psychiatric examination of him in 1967 in which Dr. Alderete, as Chief of the Psychiatric Service at Springfield, had concluded that appellant was psychotic and committable to a state institution. Having no expert witnesses more familiar than Dr. White with forensic psychiatry, appellant's counsel in cross-examining Dr. Glotfelty elicited for the jury bits of a May 15, 1971 report of a psychiatric examination of appellant conducted by Dr. Murney, who was identified as a clinical psychologist at the Federal Medical Center, to the effect that appellant showed chronic characterological problems described as basically schizoid, but that he was not currently psychotic and seemed to meet the criteria for being competent to face prosecution. The case was submitted to the jury with the only seriously contested issue being appellant's sanity at the time of the offense, and the jury returned a verdict of guilty.

■ Appellant complains first of the admission of Dr. Glotfelty's testimony as being contrary to § 4244. This was not error. Section 4244 proscribes the admission into evidence against the accused of any statement made by him in the course of examination. Also, a finding by the judge that the accused is mentally competent to stand trial may not be introduced in evidence or other-

---

3. The record before us includes a stipulation agreed upon by the government and defense counsel at the conclusion of the trial and before the court in chambers that had Dr. Alderete been present he would have testified that he had examined appellant in 1967 and had found him psychotic and commitable to a state institution. In light of our disposition of the case, we need not consider the possible relevancy of this stipulation.

wise brought to the attention of the jury, thus precluding its having any prejudicial effect on the accused's insanity defense to the crime charged. Neither of these proscriptions was violated.[4]

■■ The court did not err in *sua sponte* ordering an examination directed to appellant's competency at the time of the offense as well as to his competency to stand trial. Once the accused makes known that he will assert a defense of insanity, the court may order him examined on that issue.[5] When the accused moves for, and the court determines to grant, a § 4244 examination, the court validly can provide in its order that in the same examination inquiry be made into competency at the time of the offense.[6] This allows economy of judicial and medical efforts, of prosecution and defense efforts, and of the accused's time. In a sense, the discretion to enlarge the examination does, as appellant points out, expose him to the possibility of bolstering the government's case. But, in the end, all concerned—court, counsel, and parties—have an interest in determining if the accused was incompetent at the time of the offense, if that is to be an issue, and we see no prejudice in the court's ordering that such determination be made sooner rather than later and at a time when the determination is least likely to delay a trial.

■ We conclude, however, that the court reversibly erred in refusing to grant one of the subpoenas requested. Prior to 1966, Rule 17(b) provided that a court "may" order a subpoena issued but that an indigent defendant requesting it was required to support his motion with an affidavit stating the testimony he expected from the witness and showing further its materiality and that the defendant could not safely go to trial without the witness. Appellate courts took the view that under the rule the grant or denial of a subpoena was committed to the sound discretion of the trial court and was not to be disturbed in the absence of exceptional circumstances.[7] In 1966 the rule was amended to make issuance mandatory upon "a satisfactory showing . . . that the presence of the witness is necessary to an adequate defense." That requirement

---

4. See United States v. Harper, 450 F.2d 1032, 1035–1036 (5th Cir. 1971); Edmonds v. United States, 106 U.S.App.D.C. 373, 273 F.2d 108, 114 (1959) (en banc), cert. denied, 362 U.S. 977, 80 S.Ct. 1062, 4 L.Ed.2d 1012 (1960). Cf. Ashton v. United States, 116 U.S.App.D.C. 367, 324 F.2d 399 (1963).

5. See United States v. Baird, 414 F.2d 700, 710 (2d Cir. 1969), cert. denied, 396 U.S. 1005, 90 S.Ct. 559, 24 L.Ed.2d 497 (1970); United States v. Driscoll, 399 F.2d 135, 139 (2d Cir. 1968); United States v. Albright, 388 F.2d 719, 722–724, (4th Cir. 1964); Alexander v. United States, 380 F.2d 33, 39 (8th Cir. 1967); Pope v. United States, 372 F.2d 710, 721 (8th Cir. 1967) (en banc), vacated and remanded on other grounds, 392 U.S. 651, 88 S.Ct. 2145, 20 L.Ed.2d 1317 (1968); Winn v. United States, 106 U.S.App.D.C. 133, 270 F.2d 326 (1959), cert. denied, 365 U.S. 848, 81 S.Ct. 810, 5 L.Ed.2d 812 (1961).

6. See Winn v. United States, 106 U.S. App.D.C. 133, 270 F.2d 326 (1959), cert. denied, 365 U.S. 848, 81 S.Ct. 810, 5 L.Ed. 2d 812 (1961). Cf. United States v. Dris-coll, 399 F.2d 135, 137–138 (2d Cir. 1968); Birdsell v. United States, 346 F.2d 775, 780 (5th Cir.) cert. denied, 382 U.S. 963, 86 S.Ct. 449, 15 L.Ed.2d 366 (1965); Edmonds v. United States, 106 U.S.App.D.C. 373, 273 F.2d 108, 114 (1959) (en banc), cert. denied, 362 U.S. 977, 80 S.Ct. 1062, 4 L.Ed.2d 1012 (1960).

7. See Barnes v. United States, 374 F.2d 126 (5th Cir.), cert. denied, 389 U.S. 917, 88 S.Ct. 246, 19 L.Ed.2d 273 (1967); Thompson v. United States, 372 F.2d 826 (5th Cir. 1967); Taylor v. United States, 329 F.2d 384 (5th Cir. 1964); Flanagan v. United States, 308 F.2d 841 (5th Cir. 1962), cert. denied, 374 U.S. 838, 83 S.Ct. 1889, 10 L.Ed.2d 1059 (1963); Feguer v. United States, 302 F.2d 214 (8th Cir.), cert. denied, 371 U.S. 872, 83 S.Ct. 123, 9 L.Ed.2d 110 (1962); Murdock v. United States, 283 F.2d 585 (10th Cir.), cert. denied, 366 U.S. 953, 81 S.Ct. 1910, 6 L.Ed.2d 1246 (1960); Reistroffer v. United States, 258 F.2d 379 (8th Cir.), cert. denied, 358 U.S. 927, 79 S.Ct. 313, 3 L.Ed.2d 301 (1958). See generally 1 Wright, Federal Practice & Procedure (Criminal) § 272 (1969).

leaves broad discretion in the district court by allowing the trial judge to weigh numerous factors, including materiality, relevancy, and competency, in deciding whether to grant the request for a subpoena. *See* United States v. Hathcock, 441 F.2d 197 (5th Cir. 1971); Welsh v. United States, 404 F.2d 414 (5th Cir. 1968); Findley v. United States, 380 F. 2d 752 (10th Cir. 1967). But we have held, quoting Greenwell v. United States, 115 U.S.App.D.C. 44, 317 F.2d 108, 110 (1963), that the amended requirement means

" . . . if the accused avers facts which, if true, would be relevant to any issue in the case, the requests for subpoenas must be granted, unless the averments are inherently incredible on their face, or unless the Government shows, either by introducing evidence or from matters already of record, that the averments are untrue or that the request is otherwise frivolous." . . . That test places the burden of showing frivolity or abuse of process on the Government, where it properly belongs.

Welsh v. United States, *supra*, 404 F.2d at 417–418. See United States v. Hathcock, supra.

■ We need not decide whether under the *Welsh* test the denial of a subpoena directed to Dr. Alderete was, standing alone, an error, because we conclude that the subsequent denial of a subpoena for Dr. Murney was reversibly erroneous.

In his November 1 motion, appellant's counsel stated that Dr. Murney had examined appellant recently and would testify concerning his sanity at the time of the offense charged. It does not appear from anything in the record that the request was frivolous or the averments untrue. Such testimony would have been material and relevant to the only factual question really in issue. Without either Dr. Alderete or Dr. Murney, appellant was forced to rely on the testimony of Dr. White, whose somewhat unsure opinion as a psychiatrist not generally accustomed to applying the legal definition of insanity to his patients had considerably less probative force than the firm opinion of an expert like Dr. Glotfelty.

It is true that the motion for a subpoena addressed to Dr. Murney was filed the day before trial, which is a late hour. *From the fact that the Court granted the motion with respect to three witnesses already in Texarkana who appellant claimed would give lay testimony as to overt acts tending to show insanity at the time of escape, we may infer that the court's denial with respect to Dr. Murney sprang from a desire not to put the government to additional expense or from a desire not to delay trial, or both. "Certainly there are frivolous requests for production of witnesses and just as certainly defendants may seek to abuse the right to compulsory process at government expense. In close cases the district court must exercise its sound discretion, bearing in mind that the burden of showing frivolousness or abuse of process is on the government." United States v. Hathcock, *supra*, 441 F.2d at 200. Last minute tactics designed to bring the trial process to a halt are not to be countenanced, but considering the court's awareness of appellant's previous unsuccessful attempt to secure a subpoena for an expert to testify regarding his sanity and the apparent relevance of the desired witness' testimony, and considering also that the record does not demonstrate that in fact the trial would have been delayed, we conclude that the need for Dr. Murney's presence was sufficient to render the court's refusal to issue a subpoena for him reversibly erroneous.

The government urges that even if the court erred in not issuing a subpoena for Dr. Murney, the error was harmless because his complete report was introduced in evidence. We can find no basis in the record for the factual premise of this argument. The report was used in cross-examination of Dr. Glotfelty but was never placed in evidence. Nothing read from it in court by either Dr. Glotfelty or appellant's counsel pertained

even remotely to appellant's competency at the time of the offense. The result of the court's order remained that appellant was unsuccessful in every attempt to present important testimony that, had it been available, might have contradicted the government's expert witness.

In summary, we can do no better than to quote Judge Rives' conclusion in *Welsh*:

> Considered in the entire setting of this case, we conclude that [Moudy's] counsel should be afforded a better opportunity to develop the evidence as to [Moudy's] mental competency at the time of the commission of the alleged offense. More specifically, we hold that the court erred in refusing to order [Dr. Murney] subpoenaed.

Welsh v. United States, *supra*, 404 F.2d at 419.

Reversed and remanded.