**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Frank PITTS, Defendant-Appellant.**

**No. 76–2377.**

United States Court of Appeals, Fifth Circuit.

March 13, 1978.

---

P. Bruce Kirwan, Federal Public Defender, Ralph Washington, Asst. Federal Public Defender, Atlanta, Ga., for defendant-appellant.

William L. Harper, U. S. Atty., Dorothy Y. Kirkley, Asst. U. S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before BROWN, Chief Judge, COLEMAN and MORGAN, Circuit Judges.

JOHN R. BROWN, Chief Judge:

Frank Pitts appeals from his conviction for interstate transportation of a stolen vehicle in violation of 18 U.S.C.A. § 2312 (Dyer Act). Because we reject the contentions that (i) the trial of Pitts in the Northern District of Georgia violated the Double Jeopardy Clause of the Fifth Amendment and the Speedy Trial Clause of the Sixth Amendment, (ii) prejudicial error arose from failure to allow nonexpert testimony as to handwriting comparison, and (iii) error exists because a F.R.Crim.P. 17(b) subpoena was quashed, we affirm the conviction.

### A Cadillac To Eldorado

Sometime prior to July 19, 1973, Pitts took a 1965 cadillac belonging to Mr. and Mrs. Bernard Wenke of Decatur, Georgia, on a test drive. The following day, Pitts returned with a mechanic to inspect the engine for possible valve difficulties. Part of the inspection was another drive which metamorphosed into an extended trip. Realizing that their car had not been and was not likely to be returned, the Wenkes reported its theft to the Decatur police on July 19, 1973. While in this car on August 4, 1973, Pitts was arrested on unrelated charges in Eldorado, Illinois by the Eldorado Police Chief.

### Trial Run

The Government initiated the prosecution process in the Eastern District of Illinois. In quick succession, Pitts was indicted in August 1973, pleaded not guilty on September 10, 1973, and was set for trial on November 5, 1973. On the day that this trial was to commence, both sides stated that they were ready to proceed.[1] The trial judge then called the case for trial, and the defendant executed a waiver of jury trial, which was consented to by the Government and approved by the Court. At this point, prior to the presentation of any evidence,

---

1. The record does not clearly indicate whether the "ready" statement was made during the calendar call or on the call of the case.

the Government prosecutor requested a continuance because an essential witness, Mrs. Wenke, was not present.[2]

The District Judge denied this motion and instructed the Government to present evidence. Prior to making any opening statement or calling any witnesses, the Government moved for a dismissal of the indictment under F.R.Crim.P. 48(a). The trial judge dismissed the indictment[3] and returned Pitts, pursuant to a detainer, to Illinois custody pending state prosecution on unrelated charges. When Illinois failed to prosecute, Pitts successfully petitioned for a habeas corpus writ and was released from state custody.

## To Be Or Not To Be

On November 7, 1973, two days after the dismissal of the Government's first attempt to try Pitts, a complaint was filed and a bench warrant issued in the Northern District of Georgia to initiate the prosecution process again. For some unexplained reason, the Eastern District of Illinois Judge prevented execution of the warrant issued for Pitts. Continuing its attempt to bring Pitts to trial, the Government obtained another indictment and another bench warrant on January 22, 1974. This warrant was forwarded to the Eastern District of Illinois where the District Judge again took possession of the warrant and prevented its execution.

Not until January 14, 1975, when Pitts was arrested on unrelated charges in South Dakota, did the Government learn that Pitts was no longer within the jurisdiction of the Eastern District of Illinois. On learning of Pitts's altered geographical status, the Government had the original Northern District of Georgia indictment dismissed. On January 16, 1975, a new complaint was filed and a bench warrant sent to South Dakota. The second Georgia indictment, the third in this sequence, was returned on June 3, 1975. The question of whether Pitts would be tried was finally resolved by the commencement of trial on April 6, 1976, which resulted in his conviction.

## Evidence Of Jeopardy

Based on the initial dismissal in the Eastern District of Illinois at the Government's request and the subsequent trial in the Northern District of Georgia for the same offense, Pitts contends that he was placed in jeopardy in violation of the Fifth Amendment's guarantee against double jeopardy. Although until recently double jeopardy jurisprudence was a "morass" in some areas,[4] the determinative factor for Pitts's contention has remained unaltered. Before any double jeopardy considerations arise, one must have been placed in jeopardy. For a jury trial, jeopardy attaches when that body is empaneled and sworn. For a bench trial, jeopardy attaches when the judge begins to receive evidence. *United States v. Martin Linen Supply Co.*, 1977, 430 U.S. 564, 569, 97 S.Ct. 1349, 1353–1354, 51 L.Ed.2d 642, 650; *Illinois v. Somerville*, 1973, 410 U.S. 458, 471, 93 S.Ct. 1066, 35 L.Ed.2d 425; *Downum v. United States*, 1963, 372 U.S. 734, 736, 83 S.Ct. 1033, 10 L.Ed.2d 100.

**2.** The Government prosecutor for the Eastern District of Illinois case stated that Mrs. Wenke had been subpoenaed. However, Mrs. Wenke later testified that she never received the subpoena.

**3.** In a letter from the Eastern District of Illinois trial judge, the judge stated that: "It was my intention at the time of dismissal of the charge against Mr. Pitts that the same be dismissed with prejudice, although I did not so state at that time, and that the case be terminated." [R. at 47–48]. However, in the formal order, issued from the bench, the indictment was *not* dismissed with prejudice. [R. at 51].

**4.** One particularly confused area was that of appeals by the Government from adverse legal determinations of a court. See generally, *United States v. Morrison*, 1976, 429 U.S. 1, 97 S.Ct. 24, 50 L.Ed.2d 1; *United States v. Rose*, 1976, 429 U.S. 5, 97 S.Ct. 26, 50 L.Ed.2d 5; *United States v. Sanford*, 1976, 429 U.S. 14, 97 S.Ct. 20, 50 L.Ed.2d 17. For a valuable overview of double jeopardy problems, see Schulhofer, "Jeopardy and Mistrials," 125 U.Pa.L.Rev. 449 (1977).

In this case, the Government initially requested a continuance when the prosecutor discovered that the crucial prosecution witness was not present. This motion was denied by the District Judge. Despite the Judge's instruction to proceed, the Government did not do so. Instead, the prosecutor requested that the indictment be dismissed, and the District Judge complied. No evidence was ever presented. Consequently, under the *Martin Linen-Somerville-Downum* standard, jeopardy had not attached.[5]

### Delayed But Speedy

■ Joined with Pitts' double jeopardy contention is his argument that the two and a half year delay from the date of the first indictment, August 21, 1973, until his conviction in April 1976, violated his right to a speedy trial.[6] *Barker v. Wingo*, 1972, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101, sets forth the factors to be balanced in determining whether a defendant's right to a speedy trial has been violated. They are (i) length of the delay, (ii) the reason for the delay, (iii) the defendant's assertion of his right, and (iv) prejudice to the defendant.

Without a doubt, the two and a half year span is somewhat long for a one count indictment case. However, the weight accorded the length of the delay is diminished by the causes of the delay. It was not due to deliberate Government actions aimed at obtaining trial advantages or any other advantage. One year and two months of the delay resulted directly from the actions of the Eastern District of Illinois Judge impeding execution of the respective bench warrants. An additional five months was necessitated by the workload of the Government prosecutor. Another four and a half months was consumed while the United States Attorney for the Northern District of Georgia waited for other, unrelated criminal proceedings in South Dakota to be consummated. Of greater importance in this asserted delay was the pending prosecution of Pitts on unrelated charges in Illinois and South Dakota.

The length of delay is further counterbalanced by Pitts's failure to assert his right to a speedy trial. *United States v. Garza*, 5 Cir., 1977, 547 F.2d 1234. Finally, the only prejudice Pitts asserts is the loss of certain alleged receipts for the sale of the cadillac.[7] In the absence of any suggestion by the Government that further prosecution had been abandoned or that these receipts could safely be destroyed, the loss or destruction

---

**5.** Pitts attempts to avoid this result by pointing to language in Supreme Court cases disparaging the use of "rigid, mechanical" rules to define when jeopardy attaches and emphasizing the need to decide each case on its own facts, *e. g. Illinois v. Somerville*, 1973, 410 U.S. 458, 467, 93 S.Ct. 1066, 35 L.Ed.2d 425; *Downum v. United States*, 1963, 372 U.S. 734, 737, 83 S.Ct. 1033, 10 L.Ed.2d 100. He urges that a trial (not retrial) in this case would allow prosecutorial manipulation of the rules governing the attachment of jeopardy, similar to that adverted to in *Downum, supra*, 372 U.S. at 742, 83 S.Ct. 1033. A prosecutor could harass or burden a criminal defendant with impunity under a rigidly applied *Martin Linen* rule merely by requesting a dismissal prior to the presentation of evidence in a bench trial, or before a jury is empaneled and sworn. We do not find this argument persuasive in this case, where there is simply no evidence of any intentional delay or prosecutorial manipulations. Sufficient constitutional and statutory measures protect defendants in cases that might be tainted by an overzealous prosecutor abusing the rules marking the attachment of jeopardy to make abandonment of those rules unnecessary here.

**6.** The protections of the Sixth Amendment's Speedy Trial Clauses are activated by a "formal indictment or information or else actual restraints imposed by arrest and holding to answer a criminal charge." . . . *United States v. Marion*, 1971, 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed.2d 468, 479; *Dillingham v. United States*, 1975, 423 U.S. 64, 96 S.Ct. 303, 46 L.Ed.2d 205. The accusal necessary for triggering the Speedy Trial Clause occurred no later than the return of the first indictment on August 21, 1973. The time period covered by *Barker* thus begins at this date.

**7.** Of course, some prejudice arises from the "cloud of anxiety, suspicion, and often hostility" associated with any impending criminal prosecution and from any pretrial incarceration. See *Barker v. Wingo, supra* at 534, 92 S.Ct. at 2193; 33 L.Ed.2d at 119. We find these factors to be minimal in this case. They certainly do not shift the balance of speedy trial considerations in Pitts's favor.

of the receipts by Pitts mitigates any prejudice that may exist. He was simply the author of his own injury. *See United States v. Card,* 5 Cir., 1973, 470 F.2d 144, 145–46. Balancing these factors in *Barker* fashion, we conclude that Pitts was not denied his right to a speedy trial.[8]

*Opinions Not Comparisons*

■ Pitts contends that error occurred when the Georgia trial judge refused to allow the attorney handling his Illinois defense, Mr. Laury, to give his opinion on the authenticity of Rosemary Wenke's signature on a purported receipt for the cadillac.[9] The trial court did allow Mr. Laury to testify under the secondary evidence rule, F.R. Evid. 1004(1), about the existence and contents of the receipt and that the signature "Rosemary A. Wenke" appeared on its face. However, the Court correctly refused to allow Laury to offer his opinion that the signature was genuine.

Under F.R.Evid. 901(b)(2), nonexpert testimony concerning the genuineness of handwriting is permitted when ". . . based upon familiarity not acquired for the purposes of the litigation." Mr. Laury acquired any expertise he arguably had for purposes of a pending criminal investigation. Furthermore, he obtained his "familiarity" solely by comparing the signature on the purported car sales receipt to another sample of Mrs. Wenke's signature. Such one-shot comparisons made for purposes of the litigation lack the extent of familiarity contemplated by 901(b)(2). In light of this 901(b)(2) standard and the absence of any other evidentiary predicate that indicated justifiable reliability for this opinion, the trial judge properly excluded Mr. Laury's opinion on the genuineness of Mrs. Wenke's signature.

*Quashing*

■ Pitts's final assertion is that the trial judge improperly quashed a F.R. Crim.P. 17(b) subpoena. Prior to granting the Government's motion to quash, the trial judge (i) ascertained that the desired witness could only testify to the existence of the purported receipt of sale and (ii) offered Pitts's counsel opportunity to make an additional showing under 17(b)'s requirement that the "witness is necessary to an adequate defense." No such showing was attempted. At best, the witness involved could have only partially restated what another witness, Mr. Laury, testified to in greater detail and specificity. Coupled with the cumulative nature of this proposed witness's testimony is the Government's stipulation as to the substance of the witness's knowledge of the receipt.

---

8. Pitts's counsel tangentially argues that the preindictment delay was impermissible under the Due Process Clause of the Fifth Amendment, citing the Supreme Court's decision in *United States v. Marion,* 1971, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468. This case, as emphasized by the subsequent decision in *United States v. Lovasco,* 1977, 431 U.S. 783, 790, 97 S.Ct. 2044, 2049, 52 L.Ed.2d 752, 759, "makes clear that proof of prejudice [from preaccusation delay] is a . . . necessary but not sufficient element of a due process claim, and that the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused." We have held that Pitts suffered no actual prejudice from any delay in the proceedings, and we see no evidence that the Government intentionally used or sought delay to gain tactical advantages. See, *e. g., United States v. Manetta,* 5 Cir., 1977, 551 F.2d 1352, 1354; *United States v. Rice,* 5 Cir., 1977, 550 F.2d 1364, 1368–69. This disposition makes it unnecessary for us to isolate in which preindictment period—given the several indictments before us—the allegedly impermissible delay occurred.

9. As part of his defense to the Dyer Act charge, Pitts contended that he had purchased the cadillac on a deferred payment basis of $500 and that he had received a sales receipt. At the time of his arrest in Eldorado, Illinois, Pitts had a receipt or bill of sale in his possession purporting to show how he had acquired the Wenke car. That receipt was not signed by Mrs. Wenke. Subsequently, Pitts's attorney in the Eastern District of Illinois action, Mr. Laury, recovered a purported receipt for the cadillac which bore the signature "Rosemary A. Wenke." At Pitts's later trial in the Northern District of Georgia, Mr. Laury testified to the existence and the contents of this receipt including the purported signature of Mrs. Wenke. Sometime after the dismissal of the Eastern District of Illinois action and after Pitts's release from both federal and state custody, Pitts either lost or destroyed the receipts.

In light of the stipulation, the presentation of more detailed evidence regarding the same receipt, and the trial judge's offer to allow counsel to make an additional showing of the necessity of the witness under F.R.Crim.P. 17(b), no abuse of discretion arises from quashing the subpoena.[10]

For the foregoing reasons, we reject all the defendant's asserted errors.

AFFIRMED.

**10.** In its brief, the Government argues that the issue raised by this "quashing of a subpoena" is not governed by the F.R.Crim.P. 17(b) standards of issuance and the cases that discuss when a trial judge must grant a subpoena under this rule. However, to accept this view would enable a trial judge to avoid these standards by initially granting a subpoena and subsequently quashing it utilizing different standards. Consequently, the same considerations bearing on the grant of such a subpoena apply to a motion to quash.

In considering 17(b) subpoena requests, this Court has indicated that the broad discretion which 17(b) vests in trial judges to grant subpoenas on behalf of indigent defendants for witnesses ". . . necessary to an adequate defense . . ." is restricted by the Sixth Amendment right to compulsory process of favorable witnesses and the Fifth Amendment prohibition against unreasonable discrimination between those who are financially able to pay a witness's fees and those not able to do so. *Welsh v. United States*, 5 Cir., 1968, 404 F.2d 414. In *Welsh*, we set forth a guideline designed to promote these Fifth and Sixth Amendment interests by requiring that

" * * * if the accused avers facts which, if true, would be relevant to any issue in the case, the requests for subpoenas must be granted, unless the averments are inherently incredible on their face, or unless the Government shows, either by introducing evidence or from matters already of record, that the averments are untrue or that the request is otherwise frivolous."

*Id.* at 417. In applying this standard, we have indicated that the trial judge should exercise his or her discretion in determining the need for the testimony of a witness by weighing many factors, including materiality, relevancy, and competency of the witness's testimony. See *United States v. Hathcock*, 5 Cir., 1971, 441 F.2d 197, 200. For Pitts, the District Judge utilized these considerations in reassessing the necessity of the witness for an adequate defense. In light of the cumulative nature of the testimony sought, the delay of trial that would have been necessary before the witness could have been made available, and the stipulation regarding the witness's testimony, no abuse of discretion exists. See 8 Moore's Federal Practice ¶ 17.05, at 17–15 (2d. ed. 1976).