LAMAR, Justice,
for the Court:
¶ 1. In this criminal pro se appeal, we address several issues raised by Edgar Earl Patton, who was convicted of the crime of false pretense under Mississippi Code Section 97-19-39 (one count) and fraudulent use of identity under Mississippi Code Section 97-19-85 (four counts) in the Circuit Court of Winston County. Specifically, Patton argues the following assigned errors require reversal of his convictions: 1) the circuit court judge engaged in improper ex parte communications; 2) Patton was denied his Sixth-Amendment right to counsel at all critical phases; 3) *70 the circuit court erred in denying Patton’s motion to recuse Judge Vollor; 4) the circuit court erred by allowing a substantive amendment to the indictment; 5) Patton was denied the right to compulsory service of process; 6) Patton’s Fourth-Amendment protection against unlawful search and seizure was violated; 7) the circuit court erred by violating Uniform Circuit and County Court Rule 1.11;[1] 8) the circuit court judge’s inquiry into Patton’s educational background for purposes of determining his ability to represent himself was an improper discovery tool that bene-fitted the State and violated his Fifth-Amendment right against self-incrimination; 9) the circuit court erred by denying Patton’s motion for directed verdict; 10) jurisdiction was improper and venue was not established; 11) the jury was improperly instructed; and 12) the indictment was legally insufficient and defective. Finding no reversible error, we affirm Patton’s convictions and sentences.
FACTS AND PROCEDURAL HISTORY
¶ 2. On May 4, 2009, Patton appeared in the Circuit Court of Winston County, acting as an attorney for Ashley Dixon, even though Patton is not and has never been licensed to practice law. Patton filed a motion for discovery while acting as Dixon’s attorney on May 4, signing his name as M.E. (Edgar) Patten.[2] Michael Rias also was arraigned in circuit court that day. Rias was in need of an attorney, saw Patton, and asked Patton if he was an attorney and how much Patton would charge to represent him. Patton represented to Rias, while they were still in the Circuit Court of Winston County, that he was an attorney and that he would charge $5,000 to take Rias’s case. Rias then put Patton in touch with Rias’s mother, Willie Mae Robinson, who was to pay Patton’s bill. Thereafter, Patton called Robinson and informed her that he was the attorney her son wanted to represent him. Patton informed Robinson that he would charge a retainer of $3,000 and would require $400 up-front toward that amount. Patton also Informed Robinson that he would charge $150 an hour in addition to his retainer. Patton faxed a contract to Robinson reciting those terms, which she signed and faxed back to him. Robinson also sent the $400 up-front payment to Patton via mon-eygram.
¶ 3. Patton then began acting as Rias’s attorney. A few days later, Patton made an initial phone call to Mike Howie, an assistant district attorney in the Fifth Circuit Court District, informing Howie that Patton had been retained by Rias and inquiring as to whether Rias might be able to get a better plea deal. On May 18, 2009, Patton again appeared in the Circuit Court of Winston County acting as an attorney, this time on behalf of Rias. How-ie and Patton discussed Rias’s case, and Patton eventually informed Howie that his client would accept a plea bargain. Patton then prepared a petition to plead guilty on behalf of Rias, representing that Patton was Rias’s attorney and additionally representing a specific Mississippi Bar Number *71 as his.[3]
¶ 4. On October 8, 2009, Patton filed another motion on behalf of Dixon, again signing his name as M.E. (Edgar) Patten and again representing the same number as his. On November 16, 2009, Patton filed a motion to dismiss the case against Dixon for alleged tampering with the grand jury, again signing his name as M.E. (Edgar) Patten and giving the same bar number as his. After Patton filed his November 16, 2009, motion, Howie became suspicious and began looking into whether Patton actually was a member of the Mississippi Bar. Howie discovered that Patton was not a member of the Bar and that Patton had been using another attorney’s name and a second attorney’s bar number to file pleadings. Howie then contacted Randy Thomas, the Sheriff of Winston County, to inform him of the situation and ask him to determine Patton’s actual identity.
¶ 5. Patton was indicted by the grand jury on one count of violating Mississippi Code Section 97-19-39 (obtaining valuable thing with intent to defraud),[4] and four counts of violating Mississippi Code Section 97-19-85 (fraudulent use of identifying information to obtain a thing of value).[5] Specifically, Count I of the indictment charged that Patton fraudulently had obtained money in excess of $500 from Willie Robinson in Winston County on or about or between May 1, 2009, and May 18, 2009. Counts II through IV of the indictment charged that Patton fraudulently had used another’s identifying information to obtain a thing of value in Winston County on or about May 4, May 18, October 8, and October 16, 2009.
¶ 6. Patton was declared indigent and was appointed a public defender. Austin Vollor initially was appointed to represent Patton, but Vollor represented him only at a preliminary hearing. Judge Joseph H. Loper and Judge Clarence E. Morgan III recused themselves from Patton’s trial on the ground that they were potential witnesses in the prosecution of the case, as the charges against Patton stemmed from *72 his appearances in court before Judge Loper and Judge Morgan. Judge Loper informed this Court of the recusals by letter, and also requested that we appoint a substitute judge in the matter. Judge Frank G. Vollor was appointed as special judge to preside over the proceedings.
¶ 7. On July 19, 2010, a status hearing was held before Judge Vollor. Patton indicated he wanted to represent himself, that he had received and understood the indictment, and he declined to enter a plea. An examination under Rule 8.05 of the Uniform Rules of Circuit and County Court Practice was scheduled to determine whether Patton could proceed pro se. As no court reporter was present at the status conference, all motions were scheduled to be heard at the next hearing. Judge Vol-lor also appointed Steve Wright as standby counsel for Patton.
¶ 8. On September 24, 2010, a pretrial hearing was held before Judge Vollor then District Attorney. Forrest Allgood appeared on behalf of the State, Patton appeared pro se, and Richard Carter appeared as Patton’s new standby attorney.[6] Carter remained present and available to Patton at all times during the September 24 hearing. At the beginning of the hearing, Judge Vollor examined Patton regarding his decision to proceed pro se in order to make a determination as to whether Patton knowingly and voluntarily had waived his right to counsel, in accordance with Rule 8.05. To make a Rule 8.05 determination, Judge Vollor asked Patton a series of questions concerning his education, whether he was seeing a mental-health professional, his current medicines, and whether he had been involved in a trial or watched the procedure of a trial. While Patton answered some of the circuit court’s questions, he refused to answer several questions related to his education, stating that he wished to exercise his Fifth-Amendment right against self-incrimination. Judge Vollor ultimately found that Patton was competent to represent himself.
¶ 9. After the Rule 8.05 determination, the circuit court heard pretrial motions, beginning with Patton’s motion to recuse Judge Vollor. Patton argued that Judge Vollor did not give Patton a fair and impartial hearing on July 19, 2010, and that Judge Vollor had knowledge of material factual information such that Patton anticipated calling Judge Vollor as a witness. Patton also argued that Judge Vollor had communications regarding the case with his nephew, Austin Vollor, and this Court. Judge Vollor clearly stated on the record that any communications he had regarding the case were for the purposes of determining whether he could take the case and did not go to the merits of the matter; therefore, the circuit court overruled Patton’s motion to recuse.
¶ 10. Patton next moved to quash the indictment and to dismiss for want of “personal territory and subject matter jurisdiction.” Patton argued that the State had not established jurisdiction in this matter and had the burden to prove jurisdiction once challenged. When questioned, Patton stated that he was referring to “the juris— subject matter. Over the subject, over the person and the territory.” The circuit court found that it had subject-matter jurisdiction over criminal matters and further found that all the alleged acts had occurred in Winston County; therefore, Patton’s motion to dismiss on subject-matter and territorial jurisdiction was denied. *73 Relatedly, Patton also moved to quash the indictment, arguing that the circuit court was not allowed to look beyond the indictment for personal territory and subject-matter jurisdiction. The State argued that Patton could point to no infirmity in the indictment, as the indictment laid out the elements of the charges and included the information required. The circuit court overruled the motion to quash the indictment and set a trial date.
¶ 11. Prior to trial, a status conference was held regarding the subpoena list Patton had served on the clerk of court. Carter assisted Patton during this hearing. Patton requested subpoenas for approximately twenty people. Judge Vollor granted more than half of Patton’s requests for subpoenas, including subpoenas for District Attorney Doug Evans and Michael Rias.
¶ 12. A jury trial began November 29, 2010. Following voir dire, Evans appeared before the circuit court under subpoena and stated that, while he didn’t mind being present if necessary, he had “absolutely nothing to do with this case” and had not seen Patton before that day. Judge Vollor asked Patton what reason he had for Evans being present; however, Patton refused to disclose why he wished to call Evans as a witness, stating that he did not wish to divulge his trial strategy at that time. Because Patton could not articulate a colorable need for calling Evans as a witness, the circuit court released Evans from his subpoena.
¶ 13. During trial, the State called Rias to describe his encounters with Patton that had occurred at the Winston County Courthouse. Rias testified that he had hired Patton to take his case for $5,000 and that Patton had told him he worked for Holland & Patton in Jackson, Mississippi. Rias also identified a petition that Patton, acting as his attorney, had prepared for Rias to enter a plea of guilty. Rias identified Patton’s full name, signature, and the Mississippi Bar number on the petition. Next, the State called Robinson, Rias’s mother. Robinson testified that Patton had faxed her a representation contract, which she had signed and sent back to him. Robinson also testified that she had sent Patton a moneygram in the amount of $400 to retain Patton and had agreed ultimately to pay Patton a $3,000 “retainer,” plus attorney’s fees of $150 per hour.
¶ 14. Kim Ming, the Winston County Circuit Court clerk, was called to testify regarding pleadings that Patton had filed under false pretenses. Ming testified that Patton had filed several pleadings in the Circuit Court of Winston County using another person’s Mississippi bar number, including two documents on behalf of Ashley Dixon on November 16, a petition to plead guilty on behalf of Rias on March 18, 2010, a motion for discovery on May 4, and a motion to compel discovery on October 13, 2009.
¶ 15. After the State concluded its case, the State moved to amend the indictment. Specifically, the State moved to include attempted felony false pretense in Count I, in light of Robinson’s testimony that she had paid Patton only $400. The State argued that it was allowed to proceed on an attempt charge when the evidence did not show actual commission of the crime charged; Patton, through Carter, argued that the amendment was substantive and should have been made before trial. The State also moved to amend the dates alleged in Counts IV and V, as the dates charged in the indictment were October 8 and October 16, but the testimony showed that Patton actually had filed the pleadings at issue on October 13 and November 16. Patton again argued, through Carter, that the amendments were to substance and *74 should not be allowed. The circuit court found that the State’s requested amendments were of form, not substance, and did not prejudice the defense; therefore, the circuit court granted the State’s motion to amend the indictment as to Counts I, IV, and V.
¶ 16. Patton, through Carter, then moved for a directed verdict as to Count I. Carter argued that the State had failed grossly to demonstrate the monetary requirement of $500 or more, as Robinson had paid only $400 through a moneygram. Carter also argued that the transactions between Patton and Robinson, as well as these between Patton and Rias, had occurred outside of Winston County. The circuit court denied the motion for directed verdict as to Count I, reasoning that the State had proven that Patton had obtained a signature of a person to a written instrument with a value of more than $500, because the contract Robinson signed was for an amount of $3,000. Regarding Counts II through V, Carter argued the State had not shown any evidence that Patton had received anything of value on the dates listed on the indictments, because the evidence showed he had filed pleadings or appeared in court on those days only in an effort to help individuals, not to obtain money. The State argued that the evidence showed Patton had used another person’s bar number to obtain the services of the court, which were things of value. The circuit court also denied the motion for directed verdict as to Counts II through IV, finding that Patton had used another person’s bar number to proceed in that court.
¶ 17. After the motions for directed verdict were denied, Patton proceeded with his defense. Patton called several witnesses and questioned them himself. Patton eventually tried to call Rias back to the stand, but Rias had been sent back to the Carroll County Correctional Facility. Although the circuit court made clear that Rias would be brought back if Patton wished to question him further, the parties stipulated to certain facts regarding Rias’s prior testimony, and Carter informed the circuit court that it would not be necessary to have Rias returned to court. After the stipulation was read into the record, Patton rested.
¶ 18. After the jury was excused for the night, Patton renewed his motion for directed verdict, again arguing that the State had failed to prove all the essential elements of each count, specifically that Patton had received $500, and that venue was not proven. The circuit court again denied the motion for directed verdict, finding that the contract was for an amount in excess of $500, and that the State had shown that the “essential acts” alleged in the indictment had been committed in Winston County.
¶ 19. Patton was found guilty on all counts. After sentencing, the circuit court addressed several motions Patton had filed, including a motion for a new trial, or in the alternative, a judgment notwithstanding the verdict. All of Patton’s motions were denied, and Judge Vollor signed the sentencing orders.[7]
¶ 20. Patton, pro se, appeals his convictions, raising twelve assignments of error. Patton alleges that his trial was “replete with numerous structural errors,” and asks us to vacate, reverse, and render, or to reverse and remand the judgment of the circuit court. Finding no error, we affirm his convictions and sentences.
*75 DISCUSSION[8]
I. WHETHER JURISDICTION AND VENUE WERE ESTABLISHED.
¶ 21. Patton argues that the trial court deprived him of his “constitutional rights” by “not requiring the prosecution to prove jurisdiction on the record when challenged by Patton.” However, Patton does not point to any law or facts that would support his allegation that jurisdiction was not proper in the circuit court. Rather, Patton merely cites numerous cases for the proposition that proof of jurisdiction must appear on the record and judgments entered when a court did not have jurisdiction are void ab initio.
¶ 22. Mississippi Rule of Appellate Procedure 28(a)(l)(6) requires an appellant to include in his argument “the contentions of appellant with respect to the issues presented, and the reasons for those contentions, with citations to the authorities, statutes, and parts of the record relied on.” We have clearly stated many times that “[ijssues cannot be decided based on assertions from the briefs alone. The issues must be supported and proved by the record.”[9] Indeed, “supporting the argument of his issues with reasons and authorities is part of an appellant’s burden on appeal.”[10] We also have held that, “ ‘[i]n the absence of meaningful argument and citation of authority, this Court generally will not consider the assignment of error.’ ”[11] In this case, Patton provides no meaningful argument or support of his claim of error on this ground, other than his recitation of the general law on jurisdiction. Therefore, we will not consider this assignment of error.
II. WHETHER THE INDICTMENT WAS FATALLY DEFECTIVE.
¶ 23. At trial, Patton argued that the indictment should be dismissed “because a judge should not look beyond the indictment at the evidence, and a charge against the Defendant should be dismissed for want of personal jurisdiction and subject matter jurisdiction.” Patton now argues that the indictment was fatally defective because it was “vague,” “ambiguous,” and “misleading.” Specifically, Patton argues that Count I of the indictment is misleading because he “was convicted of a felony” for obtaining more than $500 under false pretenses under Mississippi Code Section 97-19-39(2) and that the evidence showed Robinson sent Patton only $400. However, Patton was not “convicted of a felony” for obtaining a thing worth more than $500 under false pretenses. Patton was convicted of attempting to obtain a thing worth more than $500 under false pretenses; therefore, this argument has no merit.
¶ 24. Patton further argues that Counts II through V of the indictment “leaves [sic] the reader baffled and not fact specific.” Without specificity, Patton states only that the indictment “did not inform Patton of the nature and cause of the accusation” and that “a trained legal eye would have spotted the numerous deficiencies.” Therefore, Patton argues the *76 circuit court erred in overruling his motion to dismiss.
¶ 25. Because Patton argues different grounds on appeal than those argued at the trial court, we find this issue is procedurally barred.[12] We also decline to consider this issue due to Patton’s failure to make a meaningful argument supported with adequate citation of authority.[13]
III.WHETHER PATTON’S SIXTH-AMENDMENT RIGHT TO COUNSEL WAS FULFILLED AT ALL CRITICAL PHASES.
¶ 26. Patton did not raise an issue of inadequate representation before the trial court, nor has Patton alleged that he requested counsel at some point and was denied. On appeal, Patton argues his right to counsel was violated during “every critical stage” of the proceedings, but identifies no specific critical stage at which he was without adequate counsel. In his reply brief, Patton argues for the first time that he was denied his Sixth Amendment right to counsel during a “preliminary hearing” and during a “status hearing.” However, Patton does not identify the dates these “critical stages” occurred and does not include any citations to the record to support his assignment of error on this issue.
¶ 27. Again, Patton raises an issue for the first time on appeal and fails to support it with any meaningful argument or citation to the record. Therefore, we decline to entertain this assignment of error.[14]
IV. WHETHER PATTON’S FIFTH-AMENDMENT RIGHTS WERE VIOLATED BY THE CIRCUIT COURT’S RULE 8.05 EXAMINATION.
¶28. Patton argues that Judge Vollor improperly conducted discovery for the State and violated Patton’s Fifth-Amendment constitutional right against self-incrimination while questioning him on the record, in accordance to the mandates of Rule 8.05, in order to determine whether he knowingly and voluntarily waived his Sixth-Amendment right to counsel. Specifically, Patton argues Judge Vollor’s questions about his educational background coerced him into a confession, again arguing that Judge Vollor was biased against him. Patton includes no citations to the record or authority to support his claim that questions related to his educational background were unconstitutional. Therefore, we decline to address this assignment of error.[15]
V. WHETHER IMPROPER EX PARTE COMMUNICATIONS OCCURRED AND WHETHER THE TRIAL COURT ERRED IN DENYING PATTON’S MOTION FOR RE-CUSAL.
¶ 29. Although Patton alleges throughout his assignments of error that Judge Vollor was biased against him, Patton rais *77 es two specific, related assignments of error regarding the impartiality of Judge Vollor. Patton first argues that the circuit court committed “structural error” by allowing “earwigging,” thus depriving Patton of his constitutional right to an impartial judge and jury. Patton additionally argues that Judge Vollor erred in denying Patton’s motion to recuse because Judge Vollor was biased against him, thus depriving Patton of his constitutional right to an impartial judge. As these two issues both address the impartiality of Judge Vollor and the denied motion to recuse, we discuss them together.
A. Standard of Review
¶ 80. A judge’s determination of recusal is reviewed through the lens of an abuse-of-diseretion standard.[16] “This Court applies an objective standard when deciding whether a judge should have disqualified himself.”[17] “On appeal, a trial judge is presumed to be both qualified and unbiased, and this presumption may only be overcome by evidence which produces a reasonable doubt about the validity of the presumption.”[18]
B. Ex Parte Communication
¶ 31. Patton argues that Judge Vollor engaged in improper ex parte communications in violation of Rule 1.10 of the Uniform Rules of Circuit Court and County Court, which Patton argues rendered the trial a “structural error” and denied Patton a fair trial. Patton inartfully argues that Judge Vollor had improper personal knowledge of the disputed facts of the case as a result of “earwigging” and therefore should have recused himself under Canon 3(E)(1)(a) of the Code of Judicial Ethics. Specifically, Patton takes issue with a letter written by Judge Joseph H. Loper Jr., which transmitted a recusal order signed by Judge Loper and Judge Morgan to this Court and requested that the matter be presented to Chief Justice William L. Waller so that a substitute judge could be appointed. Patton also takes issue with communications between Judge Vollor and this Court regarding whether he would take the case, as well as communications between Judge Vollor and his nephew, Austin Vollor, regarding whether Austin had represented Patton in his capacity as public defender.
¶ 32. Rule 1.10 of the Uniform Rules of Circuit and County Court reads as follows:
No person shall undertake to discuss with or in the presence or hearing of the judge the law or alleged facts of any case then pending in the court or likely to be instituted therein, except in the orderly progress of the trial, and arguments or briefs connected therewith; nor attempt in any manner, except as stated above, to influence the decision of the judge in any such matter.
URCCC 1.10 (emphasis added). Canon 3(E)(1)(a) instructs that judges should disqualify themselves if they have “personal knowledge of disputed evidentiary facts concerning the proceeding.” Rule 1.10 does not prohibit all communication regarding a case in the presence of a judge; rather, the rule expressly prohibits communication related to the law or alleged facts of a case. Likewise, the Code of Judicial Conduct requires recusal only when a judge had personal knowledge of *78 disputed evidentiary facts related to a case, not personal knowledge of all case-related facts. As Judge Vollor noted, a judge must talk about the basic facts of the case to decide if he can take it, make administrative decisions, and simply know when to be in court.
¶ 33. The record reflects that, pretrial, Judge Vollor read the case flies, read the indictments, spoke with this Court concerning his appointment, and spoke with his nephew as to whether Austin Vollor had been involved in Patton’s case. Judge Vollor also made clear that his communication pretrial was for administrative purposes only, and he was not discussing the merits of the case. We find that these communications do not violate Rule 1.10 and were not improper. As for Judge Loper’s letter, it merely transmitted a re-cusal order signed by Judge Loper and Judge Morgan to the Clerk of this Court and requested this Court to appoint a special judge. The letter does not mention Judge Vollor. Therefore, we find that Patton has made no showing that Judge Vollor engaged in any improper ex parte communications or “earwigging,” or that he had any personal knowledge of the disputed facts of Patton’s case prior to trial. This issue is without merit.
C. Motion for Recusal
¶ 34. Patton relatedly argues that the circuit court erred in denying his motion for recusal of Judge Vollor under Rule 1.15 because Judge Vollor was biased against him. Specifically, Patton claims that Judge Vollor should have recused himself because of his relation to Austin Vollor, the public defender briefly appointed to Patton’s case, and appears to argue again that Judge Vollor engaged in a conspiracy to obtain knowledge of Patton’s case through communication with Austin Vollor.[19]
? 35. The Code of Judicial Conduct provides, “[a] judge should disqualify himself in a proceeding where his impartiality might be reasonably questioned by a reasonable person knowing all the circumstances ....”[20] The Code additionally explains that such circumstances include when the judge had a “personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding.” [21] Patton has pointed to nothing in the record to support his claim that Judge Vollor’s impartiality should be questioned or that Judge Vollor was prejudiced against Patton. We have said that, “absent some showing of actual prejudice or bias, there was no error” in a judge presiding over a trial.[22] Therefore, as Patton has made absolutely no showing of actual prejudice or bias on the part of Judge Vollor, we find that Judge Vollor did not abuse his discretion in denying *79 Patton’s motion for recusal. This issue is without merit.
VI. WHETHER PATTON’S FOURTH-AMENDMENT RIGHT TO BE FREE OF UNREASONABLE SEARCH AND SEIZURE WAS VIOLATED.
¶ 86. Patton did not raise a Fourth-Amendment claim before the circuit court, which procedurally bars this issue from our review.[23] Therefore, we do not consider this assignment of error.
VII. WHETHER PATTON WAS DENIED HIS SIXTH-AMENDMENT RIGHT TO COMPULSORY SERVICE OF PROCESS.
A. Standard of Review
¶ 37. We have held that “a defendant’s right to compulsory process is not absolute and the state may require a showing of some colorable need for persons to be summoned lest the right be abused.”[24] We also have held the question of whether a defendant “demonstrated a colorable need is addressed to the trial court’s sound discretion,” and the trial court’s decision will not be reversed without a clear showing “that the court’s ruling was so fundamentally unfair as to deprive [defendant] of due process of law.”[25]
B. Legal Analysis
¶ 38. Patton argues that he was denied his Sixth-Amendment right to compulsory service of process related to the testimony of District Attorney Doug Evans and Michael Rias. Specifically, Patton argues that the circuit court improperly dismissed Evans from his subpoena, hindering his ability to conduct his defense properly, and that it allowed the prosecution to make Rias unavailable at trial.
¶39. The Sixth Amendment affords a defendant the right “to have compulsory service for obtaining witnesses in his favor.”[26] The Mississippi Constitution mirrors this right by allowing the accused to obtain witnesses in his favor.[27] States cannot arbitrarily deny a defendant “the right to put on the stand a witness ... whose testimony would have been relevant and material to the defense.”[28] However, the right to compulsory process is not absolute.[29] We have held that a defendant does not have a constitutional right to subpoena “anyone or anything he pleases.” [30] Additionally, we have recognized that “the right to call witnesses is limited to relevant and material testimony.”[31] The burden is on the defendant to demonstrate a “colorable need” for the witness.[32]
¶ 40. In this case, Patton failed to demonstrate that Evans’s anticipated testimony was relevant and material to Pat *80 ton’s defense. Although the trial court allowed Patton to subpoena Evans, when Evans arrived at court he explained to Judge Vollor that he had never had any interactions with Patton or dealings with Patton’s case, and in fact “had never seen [Patton] in [his] life.” Judge Vollor asked Patton how Evans’s testimony would support his defense, but Patton refused to answer, stating he did not want to expose his defense strategy. As Patton refused to articulate how Evans’s testimony would be relevant or material to his defense, Judge Vollor released Evans from his subpoena. We find that the circuit court did not abuse its discretion in releasing Evans from his subpoena, as Patton refused to divulge how Evans’s testimony would aid his defense and made no showing that there was a colorable need for his testimony-
¶ 41. As to the testimony of Rias, he was called at trial as a witness for the State. Patton, through his standby attorney, cross-examined Rias. Later in the trial, Patton stated that he wanted to bring Rias back to court to question him further, but Rias already had been transported back to prison. Judge Vollor clearly stated on record that the circuit court would have Rias returned to trial if the parties desired; however, the parties agreed on record that any additional testimony by Rias was unnecessary in light of the State’s stipulation to certain facts. Therefore, Rias was not brought back to court to testify for a second time. Contrary to Patton’s allegations, the circuit court did not make Rias unavailable as a witness. Rather, Patton cross-examined Rias, and the circuit court clearly was willing to have Rias returned to court to give additional testimony if necessary. This issue is without merit.
VIII. WHETHER THE AMENDMENTS TO THE INDICTMENT WERE PROPER.
A. Standard of Review
¶ 42. “ ‘The question of whether an indictment is fatally defective is an issue of law and deserves a relatively broad standard of review by this Court.’ ”[33] This court has held that a review of the legal sufficiency of an indictment must be reviewed de novo.[34]
B. Legal Analysis
¶ 43. Patton argues that the amendments to the indictment violated Rule 7.09 of the Uniform Rules of Circuit and County Court. Specifically, Patton contends that amending the charge in Count I from “committing false pretense” to “an attempt to commit false pretense” was an amendment of substance and not of form. Patton also argues that the amendments to the dates in Counts IV and V were substantive and should have been denied. He argues that all the amendments were prejudicial.
¶ 44. We have stated, “ ‘[i]t is fundamental that courts may amend indictments only to correct defects of form; however, defects of substance must be corrected by the grand jury.’ ”[35]
It is well settled in this [S]tate [ ... ] that a change in the indictment is permissible if it does not alter facts which are the essence of the offense on the *81 face of the indictment as it originally stood or materially alter a defense to the indictment as it originally stood so as to prejudice the defendant’s case.[36]
We have explained that the “test for whether an amendment to the indictment will prejudice the defense is whether the defense as it originally stood will be equally available after the amendment is made.”[37]
¶45. As to the amendment of Count I from a crime of false of pretense to a crime of an attempt to commit false pretense, Mississippi Code Section 99-19-5(1)[38] allows a jury to find a defendant indicted for a crime “guilty of the offense as charged or any attempt to commit the same offense, or may find him guilty of an inferior offense.”[39] Thus, we have held that defendants in criminal cases are on notice that they “could be convicted of the attempt charge” under Mississippi Code Section 9-19-5, and an amendment of an indictment to change a charge to attempt to commit the charged offense “had the same result as a permissible jury instruction on the attempt charge.”[40] In this case, Patton was on notice that he could be convicted of attempt to commit any of the offenses with which he was charged in the indictment. Therefore, we find that the amendment to Count I did not prejudice Patton and that the circuit court did not err in allowing the amendment to Count I of the indictment to change the charge to attempt to commit false pretense. This issue is without merit.
¶ 46. As for the amendments to Counts IV and V, we have recognized that an amendment to the date of an offense charged in an indictment is not of substance if it does not materially alter the facts that are essential to the offense.[41] “Unless time is an essential element or factor in the crime ... an amendment to change the date on which the offense occurred is one of form only.”[42] In this case, the circuit court allowed the indictment to be amended as to Counts IV and V to change the dates charged in the indictment to correct a mistake regarding the days on which Patton filed pleadings using someone else’s bar number. In this case, time is not an essential element or factor in the crime of fraudulent use of identity, and the change in dates did not alter any facts essential to the charged offenses, as there was no factual dispute regarding these dates. Therefore, we find that the amendments to Counts IV and V were to form only. This issue is without merit.
*82 IX. WHETHER THE TRIAL COURT PROPERLY DENIED THE MOTION FOR DIRECTED VERDICT.
A. Standard of Review
¶ 47. Motions for directed verdict and judgment notwithstanding verdict (JNOV) “challenge the legal sufficiency of the evidence.”[43] “Since each requires consideration of the evidence before the court when made, this Court properly reviews the ruling on the last occasion the challenge was made in the trial court.”[44] “In appeals from an overruled motion for JNOV the sufficiency of the evidence as a matter of law is viewed and tested in a light most favorable to the State.”[45] “We are authorized to reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.”[46]
B. Legal Analysis
¶ 48. The State argues that Patton waived his right to appeal the denial of his motion for directed verdict at the end of the State’s case-in-chief because he moved forward with his own case. However, the record shows that Patton renewed his motion for directed verdict at his sentencing hearing, and the circuit court again denied his motion. Patton also moved for a JNOV at his sentencing hearing. Therefore, we treat this assignment of error as an appeal of the denial of Patton’s motion for JNOV, reviewed in the light most favorable to the State and considering the evidence at the end of trial.[47]
¶ 49. Patton argues that his motion should have been granted because the indictment “on its face, is a nullity” that required Patton to “speculate or imagine what the alleged crime really was.” Patton also argues that the amendment to the indictment was unconstitutional.[48] Patton makes no allegation that the evidence was not legally sufficient to convict him of the crimes with which he was charged and makes no specific allegations as to what element(s) of which crime(s) were not proven by the State. As Patton does not challenge the sufficiency of the evidence, but rather again challenges the sufficiency of the indictment, we find that this issue is without merit.
X. WHETHER THE JURY WAS PROPERLY INSTRUCTED ON ALL COUNTS.
A. Standard of Review
¶ 50. “Jury instructions are within the discretion of the trial court and the settled standard of review is abuse of discretion.”[49] “The jury instructions are to be read as a whole, with no one instruction to be read alone or taken out of context.”[50] “When read together, if the jury instructions state the law of the case *83 and create no injustice, then no reversible error will be found.”[51]
B. Legal Analysis
¶ 51. Patton argues that the circuit court judge erred by denying every instruction offered by the defense and granting every instruction offered by the State. Patton further argues that the circuit court refused to allow the defense to inform the jury of each element of the crime which the State was required to prove, failed to recite the elements of the statute, failed to inform the jury of the legislative intent of the statutes he was accused of violating, and erred by including, “if the State fails to prove any one or more of the above elements beyond a reasonable doubt then you should find for the defendant” in the jury instructions. According to Patton, this language is “misleading” and “limits the jury to only one element, and the state fully knew that their required burden [was] to prove all of the essential elements of the crime.” Patton also argues that he was entitled to have jury instructions on his theory of defense.
¶ 52. However, the circuit court did grant Patton’s instructions D-9 and D-10. As the trial court did grant two of Patton’s proposed defense instructions, we find Patton’s argument that the trial court erred by denying every instruction he proposed is without merit. Further, Patton failed to object at trial to the language he now challenges. Therefore, we find this argument is barred on appeal.[52] Reading the jury instructions as a whole, we find the instructions correctly stated the law of the case and that the jury was properly instructed on all elements of each count. This issue is without merit.
XI. WHETHER RULE 1.11 WAS VIOLATED.
¶ 53. Patton argues that he was denied his right to a fair trial because Allgood did not sign the orders he prepared for the circuit court in accordance with Rule 1.11 of the Uniform Rules of County and Circuit Court.[53] Specifically, Patton objects to the sentencing orders, arguing that Allgood’s failure to sign the orders deprived him of a fair trial. However, as Patton has not made a meaningful argument, cited any evidence, or cited any authority to support his allegations, we decline to discuss this assignment of error.[54] Additionally, Patton failed to object to the lack of Allgood’s signature on the prepared orders at trial; therefore, he has waived his right to raise this issue on appeal.[55]
CONCLUSION
¶ 54. We find no merit to in any of Patton’s assignments of error. Therefore, *84 we affirm the judgment of the Winston County Circuit Court.
¶ 55. COUNT I: CONVICTION OF FALSE PRETENSE AND SENTENCE OF THREE (3) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH ONE (1) YEAR AND ONE (1) DAY TO SERVE AND ONE (1) YEAR AND 364 DAYS SUSPENDED FOR A PERIOD OF FIVE (5) YEARS ON SUPERVISED PROBATION, AFFIRMED. COUNT II: CONVICTION OF FRAUDULENT USE OF I.D. AND SENTENCE OF TWO (2) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH ONE (1) YEAR AND ONE (1) DAY TO SERVE AND 364 DAYS SUSPENDED FOR A PERIOD OF FIVE (5) YEARS ON SUPERVISED PROBATION, AFFIRMED. COUNT III: CONVICTION OF FRAUDULENT USE OF I.D. AND SENTENCE OF TWO (2) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH ONE (1) YEAR AND ONE (1) DAY TO SERVE AND 364 DAYS SUSPENDED FOR A PERIOD OF FIVE (5) YEARS ON SUPERVISED PROBATION, AFFIRMED. COUNT IV: CONVICTION OF FRAUDULENT USE OF I.D. AND SENTENCE OF TWO (2) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH ONE (1) YEAR AND ONE (1) DAY TO SERVE AND 364 DAYS SUSPENDED FOR A PERIOD OF FIVE (5) YEARS ON SUPERVISED PROBATION, AFFIRMED. COUNT V: CONVICTION OF FRAUDULENT USE OF I.D. AND SENTENCE OF TWO (2) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH ONE (1) YEAR AND ONE (1) DAY TO SERVE AND 364 DAYS SUSPENDED FOR A PERIOD OF FIVE (5) YEARS ON SUPERVISED PROBATION, AFFIRMED. SENTENCES SHALL RUN CONSECUTIVELY TO EACH OTHER.
WALLER, C.J., CARLSON AND DICKINSON, P.JJ., RANDOLPH, KITCHENS, CHANDLER, PIERCE AND KING, JJ., CONCUR.

. Rule 1.11 provides as follows:
With the exception of default or agreed orders and judgments, all proposed orders and judgments to be signed by the court shall be submitted directly to the court by an attorney and not through the clerk or through correspondence, unless otherwise permitted by the court. All orders or judgments presented to the court shall be signed by the attorney presenting the same.
URCCC 1.11.

. Michael E. Patten is an attorney licensed in Mississippi and listed in the Bar directory.

. That Bar number is assigned to a second Mississippi attorney, who testified at the trial.

. Mississippi Code Section 97-19-39 reads as follows:
(1) Every person who, with intent to cheat or defraud another, shall designedly, by col- or of any false token or writing, or by another false pretense, obtain the signature of any person to any written instrument, or obtain from any person any money, personal property, or valuable thing, with a value of less than Five Hundred Dollars ($500), upon conviction thereof, shall be guilty of a misdemeanor and punished by imprisonment in the county jail not exceeding six (6) months, and by fine not exceeding One Thousand Dollars ($1,000.00). (2) Every person who, with intent to cheat or defraud another, shall designedly, by color of any false token or writing, or by another false pretense, obtain the signature of any person to any written instrument, or obtain from any person any money, personal property, or valuable thing, with a value of Five Hundred Dollars ($500) or more, upon conviction thereof, shall be guilty of a felony and punished by imprisonment in the State Penitentiary not exceeding ten (10) years, and by fine not exceeding Ten Thousand Dollars ($10,000.00).
Miss.Code Ann. § 97-19-39 (Rev.2006).

.Mississippi Code Section 97-19-85 reads as follows:
(1) Any person who shall make or cause to be made any false statement or representation as to his or another person's or entity’s identity, social security account number, credit card number, debit card number or other identifying information for the purpose of fraudulently obtaining or with the intent to obtain goods, services or any thing of value, shall be guilty of a felony and upon conviction thereof for a first offense shall be fined not more than Five Thousand Dollars ($5,000.00) or imprisoned for a term not to exceed five (5) years, or both.
Miss.Code Ann. § 97-19-39 (Rev.2006).

. Steve Wright also was representing Rias; therefore, he was replaced as Patton’s standby counsel by Richard Carter.

. Although it is not clear from the record that the sentencing orders were prepared by All-good, Patton alleges that they were, and the State does not dispute his allegation.

. We have reorganized Patton's assignments of error into a more logical order. We also have combined Patton's assigned issues one and three, as they involve overlapping analysis.

. Pulphus v. State, 782 So.2d 1220, 1224 (Miss.2001).

. Alexander v. State, 759 So.2d 411, 418 (Miss.2000) (citing Pate v. State, 419 So.2d 1324, 1325-26 (Miss.1982)).

. Randolph v. State, 852 So.2d 547, 558 (Miss.2002) (quoting Govan v. State, 591 So.2d 428, 431 (Miss. 1991)).

. See Haddox v. State, 636 So.2d 1229, 1240 (Miss.1994) ("The assertion on appeal of grounds for an objection which was not the assertion at trial is not an issue properly preserved on appeal.”) (citations omitted).

. Randolph, 852 So.2d at 558.

. Randolph, 852 So.2d at 558 (this Court generally will not consider an assignment of error not supported by meaningful argument and citation of authority); see Haddox, 636 So.2d at 1240 (issue is not properly preserved for appeal absent objection on those grounds at trial).

.See Randolph, 852 So.2d at 558 (this Court generally will not consider an assignment of error not supported by meaningful argument and citation of authority).

. Miss. United Methodist Conference v. Brown, 929 So.2d 907, 908 (Miss.2006).

. Jones v. State, 841 So.2d 115, 135 (Miss.2003).

.Patton also states, for the first time, that Judge Vollor was appointed by an order signed by Chief Justice Waller, although Mississippi Code Section 9-1-105(2) requires the Chief Justice to appoint a special judge with the advice and consent of the majority of this Court. However, Patton makes no meaningful argument and provides no citation to authority that would require reversal of his convictions on this ground. See Randolph, 852 So.2d at 558 (this Court generally will not consider an assignment of error not supported by meaningful argument and citation of authority). Further, Patton is procedurally barred from arguing this issue on appeal, because he failed to raise it before the circuit court. See Haddox, 636 So.2d at 1240 (issue is not properly preserved for appeal absent objection on those grounds at trial). Therefore, we decline to entertain this argument.

. Code of Judicial Conduct Canon 3(E)(1).

. Id.

. Jones, 841 So.2d at 135.

. Id. (citing Bredemeier v. Jackson, 689 So.2d 770, 774 (Miss.1997)). See also Turner v. State, 573 So.2d 657, 658 (Miss.1990).

. See Haddox, 636 So.2d at 1240 (issue is not properly preserved for appeal absent objection on those grounds at trial).

. Hentz v. State, 542 So.2d 914, 916 (Miss.1989) (quoting Gray v. State, 472 So.2d 409, 413 (Miss.1985)).

. Id. (citing Gray, 472 So.2d at 413).

. U.S. Const. amend. VI.

. Miss. Const. art. 3, § 26.

. Washington v. Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967).

. Hentz, 542 So.2d at 916 (citing United States v. Valenzuela-Bernal, 458 U.S. 858, 102 S.Ct. 3440, 3446, 73 L.Ed.2d 1193 (1982)).

. Goforth v. City of Ridgeland, 603 So.2d 323 (Miss.1992).

. Hentz, 542 So.2d at 916 (citations omitted).

. Id. at 915.

. Montgomery v. State, 891 So.2d 179, 185 (Miss.2005) (quoting Nguyen v. State, 761 So.2d 873, 874 (Miss.2000) (citing Peterson v. State, 671 So.2d 647 (Miss.1996))).

. Id. at 652.

. Id. at 185-85 (quoting Evans v. State, 813 So.2d 724, 728 (Miss.2002) (quoting Mitchell v. State, 739 So.2d 402, 404 (Miss.Ct.App.1999))). See also URCCC 7.09.

. Id. at 186 (quoting Miller v. State, 740 So.2d 858, 862 (Miss.1999) (quoting Greenlee v. State, 725 So.2d 816, 821 (Miss.1998))).

. Id. (citing Griffin v. State, 584 So.2d 1274, 1276 (Miss.1991).

. Mississippi Code Section 99-19-5(1) reads as follows:
On an indictment for any offense the jury may find the defendant guilty of the offense as charged, or of any attempt to commit the same offense, or may find him guilty of an inferior offense, or other offense, the commission of which is necessarily included in the offense with which he is charged in the indictment, whether the same be a felony or misdemeanor, without any additional count in the indictment for that purpose.
Miss.Code Ann. § 99-19-5 (Rev.2007).

. Eakes v. State, 665 So.2d 852, 860 (Miss.1995).

. Id.

. Wilson v. State, 515 So.2d 1181, 1182 (Miss.1987).

. Baine v. State, 604 2d. 258, 261 (Miss.1992).

. McClain v. State, 625 So.2d 774, 778 (Miss.1993).

. Id.

. Id. (citations omitted).

. Id. (citations omitted).

. Hodges v. State, 743 So.2d 319, 325 (Miss.1999).

. As the sufficiency of the indictment is discussed in Section II, and the amendment of the indictment is discussed in Section VIII, we will not discuss the indictment at this point.

. Bailey v. State, 78 So.3d 308, 315 (Miss.2012) (citing Newell v. State, 49 So.3d 66, 73 (Miss.2010)).

. Id. (citing Young v. State, 891 So.2d 813, 819 (Miss.2005) (citing Howell v. State, 860 So.2d 704, 761 (Miss.2003))).

. Id. (citing Newell, 49 So.3d at 73) (citing Rubenstein v. State, 941 So.2d 735, 784-85 (Miss.2006))).

. See Hawthorne v. State, 835 So.2d 14, 19 (Miss.2003); Haddox, 636 So.2d at 1240 (issue is not properly preserved for appeal absent objection on those grounds at trial).

. Rule 1.11 provides as follows:
With the exception of default or agreed orders and judgments, all proposed orders and judgments to be signed by the court shall be submitted directly to the court by an attorney and not through the clerk or through correspondence, unless otherwise permitted by the court. All orders or judgments presented to the court shall be signed by the attorney presenting the same.
URCCC 1.11

. Randolph, 852 So.2d at 558.

. Rollins v. State, 970 So.2d 716, 721 (Miss.2007) (citing Spicer v. State, 921 So.2d 292, 309 (Miss.2006) (citing Williams v. State, 684 So.2d 1179, 1203 (Miss.1996))).