# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-CP-01002-COA

**ANTHONY BERNARD READING**                                    **APPELLANT**

**v.**

**AMANDA FRANCES READING**                                   **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 07/08/2021 |
| TRIAL JUDGE: | HON. CARTER O. BISE |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CHANCERY COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | ANTHONY BERNARD READING (PRO SE) |
| ATTORNEY FOR APPELLEE: | JOHN R. REEVES |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 11/15/2022 |
| MOTION FOR REHEARING FILED: | |

**BEFORE WILSON, P.J., LAWRENCE AND EMFINGER, JJ.**

**LAWRENCE, J., FOR THE COURT:**

¶1. Anthony Reading appeals from the Harrison County Chancery Court's judgment awarding his ex-wife Amanda Reading title to marital property. On appeal, Anthony argues that the chancery court violated his constitutional rights to due process of law. After review, we find that Anthony's claim on appeal is procedurally barred because it fails to comply with Mississippi Rule of Appellate Procedure 28(a)(7). The rule requires a party to cite relevant authority and use the authority to develop "meaningful legal arguments." Accordingly, we affirm the chancery court's judgment.

## FACTS

¶2. Amanda and Anthony were married on February 26, 1999, in Conway, New

Hampshire. They have five children together and moved to Mississippi twenty days before separating on May 19, 2017.

¶3. On January 29, 2018, Amanda and Anthony's daughter, Susan Reading,[1] received a letter from Heather A. Searcy, the Assistant State Attorney (ASA) for the State of Florida. Susan was the victim of sexual assault by Anthony in Florida. The letter notified Susan that Anthony had pled guilty to two counts of sexual activity with a child. Anthony was sentenced to serve thirty years of incarceration in Perry, Florida, in the custody of the Florida Department of Corrections.

¶4. On August 7, 2018, Amanda filed a complaint for divorce against Anthony on the grounds of incarceration and irreconcilable differences. Anthony was served with process on September 14, 2018, at the Taylor Correctional Institute in Florida.

¶5. On September 20, 2018, Anthony filed a motion to dismiss the divorce complaint alleging that Amanda and her attorneys violated his Fifth Amendment and Fourteenth Amendment rights. Anthony claimed his rights were violated because the criminal-conviction letter, which contained a summary of the sexual-abuse charges, was attached to the divorce complaint, and he could not respond. He also claimed he would be subject to further prosecution if he admitted or denied the allegation.

¶6. On June 4, 2019, the case was called for trial in the Harrison County Chancery Court. The chancery court denied Anthony's motion to dismiss because the letter from the ASA did not relate to the truth or falsity of the sexual-abuse allegations and, instead, related only the

---

[1] For the purpose of this opinion, we use a pseudonym for the child's name for privacy purposes.

2

fact that Anthony had pled guilty and had been sentenced to serve time in a penitentiary.

¶7. At trial, Anthony was called three times as a witness, but he did not answer. The chancery court noted that an order requesting transport was issued to the Florida penal system, and the State of Florida's response to not abide by that request was not within the court's jurisdiction to address.[2]

¶8. On June 21, 2019, the Harrison County Chancery Court entered judgment granting the divorce and awarding Amanda sole physical and legal custody of the minor children. The chancery court reserved the distribution of marital property and any other assets for a later date.

¶9. On April 19, 2021, Amanda filed a petition for the distribution of "any and all marital assets not otherwise distributed in the judgment." Pursuant to Mississippi Rule of Civil Procedure 81, a summons was issued and served upon Anthony by mail to the Wakulla Correctional Institution in Crawfordville, Florida. The summons requested that Anthony appear or defend the petition for distribution in the Harrison County Chancery Court on July 7, 2021.

¶10. On May 10, 2021, the Wakulla County Sheriff's Office sent Amanda a "non-enforceable return of service," stating:

> Summons was received on "4/27/2021 at 10:52 A.M. and served on READING, ANTHONY, the within names, at 9:00 A.M. on 5/5/2021 in Wakulla County, Florida, by delivering to the within named a true copy of this Writ with the date and hour of service endorsed thereon by me, and at the same

---

[2] On March 12, 2019, the chancery court entered an "Order Requesting Transport From The State of Florida." The order required Anthony to appear before the Harrison County Chancery Court on June 4, 2019.

time I delivered to the within a copy of the plaintiff's initial pleading as furnished by the plaintiff."

¶11.    On July 1-2, 2021, Anthony responded with a written "Statement of Facts," "Formal Complaint of Illegal Activity," and "Request for Investigation." Anthony alleged the following:

> (1) He had "no knowledge of or have ever[] seen the [referred] document, listed by the [Amanda's] lawyer, in the document included with the Summons [and was never issued] any FINDING, RULING OR DECREE in this case, by the Court . . . ." (2) "No JUDGEMENT, FINDING OR RULING was issued to me from the court on a motion to the Court to PROTECT and PRESERVE my CONSTITUTIONAL RIGHTS in the court . . . ." (3) He was "denied [his] ability to appeal or submit further motions . . . . (4) [and had] been subject to threats by MARK R. READING, acting on behalf of [Amanda] to have [him] sign over PROPERTY." (5) "Susan, did willingly violate a standing no contact order, issued by The State of Florida on behalf of [Amanda]."[3] (6) [Amanda's] Attorney, Mr. Reeves contacted [him] by mail and falsely claimed that [he] had been in negotiations with [Amanda] and agreed to conditions . . . ."[4]

¶12.    Anthony also requested a formal review of (1) "all documents filed with the court, with [his] signature to ensure . . . assets [were] there and that [his] signature [could] be verified . . . with the legal mail stamp from a Florida Department of Corrections Institution";

---

[3] Anthony stated that his daughter Susan made "third party contact through [his] Healthcare Advocate/Emergency Contact, Sharon J. Elieff" and that Susan requested Elieff use "any influence [she had over him]" to get Anthony to sign over property to Amanda. Anthony also stated that Elieff notified him, through "JPAY Email," that Susan admitted to participating in illegal activities with Amanda to gain control over the property to sell it.

[4] Anthony also explained that he responded to Reeves's letter and told him that the statements regarding negotiations were false. In addition, he asked Reeves "to provide the details of when, where and how these negotiations took place" and "requested an accounting of all assets being held by [Amanda]." Anthony stated that Reeves submitted only his brief in response. Anthony believed "this [was] an attempt to cover up illegal activity of [Amanda] and to hide the illegal sale of property not belonging to [Amanda]."

4

(2) "legal proceedings to ensure [his] constitutional rights have been protected"; and (3) "any illegal activity be prosecuted, showing [him] as the victim . . . ."

¶13. Lastly, Anthony "formally lodge[d] a complaint with the court" against Amanda's attorney, Reeves, "in the matter of false statements in a legal document" and requested that the court "stop these proceedings until a investigation is conducted, [its] finding[s] brought before the court and a complete disclosure of evidence."

¶14. On July 7, 2021, the chancery court held a hearing on the distribution of the real property, which was the only remaining issue in the divorce. Amanda testified that she bought the house about "a year and a half" before the divorce. She explained that she and Anthony came to Mississippi to purchase the house and that Anthony lived in the house only about thirty days before he went back to Florida "to retrieve [their] oldest daughter," and was incarcerated for the crimes against Susan. She also stated that both of their names were on the paperwork. She explained that she used money from her 401(k) account to pay the down payment, and Anthony did not participate in any of "the financial aspect of the house." Amanda stated that she had paid every monthly payment since purchasing the home.

¶15. On July 8, 2021, the Harrison County Chancery Court found process was sufficient, and entered final judgment on the petition for distribution filed on April 19, 2021. The chancery court awarded full title, possession, and ownership of the marital property to Amanda.

¶16. On July 29, 2021, Anthony wrote a letter to the Harrison County Chancery Court requesting "a copy of the schedule of fees required for filing an appeal in a civil case."

Anthony noted that he was "under a time constraint" and would appreciate a "quick response." The same day, Anthony filed a "Notice of Intent To Appeal" and a "Motion For Extended Time To Answer/Comply With The Verdict of The Court." He requested a ninety-day extension. On August 10, 2021, Anthony filed a motion to amend the record, and on August 24, he filed an "Appeal of All Verdicts, Decrees Orders And Judgments."

## STANDARD OF REVIEW

¶17. It is well settled that this Court "applies a limited standard of review on appeals from chancery court." *Rodgers v. Moore*, 101 So. 3d 189, 193 (¶8) (Miss. Ct. App. 2012) (quoting *Tucker v. Prisock*, 791 So.2d 190, 192 (¶10) (Miss. 2001)); *see also Reddell v. Reddell*, 696 So. 2d 287, 288 (Miss. 1997). The chancery court's factual findings will not be disturbed if they are "supported by substantial evidence unless we can say with reasonable certainty that the chancellor abused his discretion, was manifestly wrong [or] clearly erroneous[,] or applied an erroneous legal standard." *Biglane v. Under the Hill Corp.*, 949 So. 2d 9, 13-14 (¶17) (Miss. 2007) (quoting *Cummings v. Benderman*, 681 So. 2d 97, 100 (Miss. 1996)). Questions of law are reviewed de novo. *Id.* at 14 (¶17); *see also Rodgers v. Moore*, 101 So. 3d 189, 193 (¶8) (Miss. Ct. App. 2012).

## ANALYSIS

¶18. Anthony argues the chancery court violated his constitutional rights to due process when the court (1) did not notify him of an "order of extradi[t]ion," and he "was not given the chance to waive the objection"; (2) did not "issue a Decree of Divorce or any other documents" pertaining to the ruling in Amanda's favor, which stopped him from timely filing

6

appeals; (3) did not "read any motions, notices, or statements from the appellant into the record"; and (4) did not respond to "requests from the appellant to investigate alleged criminal activity" being conducted by Amanda and her attorneys. He cites only the Due Process Clause of the Fourteenth Amendment and provides no legal argument for his contentions.

¶19.    Mississippi Rule of Appellate Procedure 28(a)(7) governs the argument section of appellate briefs, and states, "The argument shall contain the contentions of appellant with respect to the issues presented, and the reasons for those contentions, with citations to the authorities, statutes, and parts of the record relied on." The rule "does not simply require a party to mention authority; the authority must be used to **develop the argument in a meaningful way**." *Walker v. State*, 197 So. 3d 914, 919 (¶25) (Miss. Ct. App. 2016) (emphasis added) (quoting *Archer v. State*, 118 So. 3d 612, 621 (¶29) (Miss. Ct. App. 2012)). Arguments that do not comply with the rule are procedurally barred. *Hill v. State*, 215 So. 3d 518, 524 (¶10) (Miss. Ct. App. 2017).

¶20.    In an analogous case, this Court found that an appellant failed to sufficiently brief his arguments because he provided only a "summary of his arguments" and "did not elaborate his point." *Hill v. State*, 940 So. 2d 972, 973 (¶¶4-5) (Miss. Ct. App. 2006). Hill only listed issues such as "[t]he defendant was denied due process of law by the court not introducing evidence . . . [[that] would have shown a propensity for violence and . . . would have been relevant to the issue." *Id.* at 973 (¶5). This Court explained that the "argument" was insufficient because Hill "did not include an argument at all." *Id.*; *see* M.R.A.P. 28(a)(7)

7

(stating the appellant's duty to provide "the reasons for [his] contentions, with citations to the authorities, statutes, and parts of the record relied on"). Hill also failed to cite authority. *Id.* at 974 (¶8). Although Hill cited five cases, he "did not cite any one case for any particular argument or proposition." *Id.* Also, none of the cases were relevant to any argument. *Id.* This Court held that Hill failed to comply with Rule 28(a)(7) and did not address the merits. *Id.*

¶21. Likewise, Anthony failed to sufficiently brief his arguments. Anthony cited only some parts of the Fourteenth Amendment, and the citation was not relevant or entirely accurate. He also failed to cite any other legal authority. Other than the four legal issues (*see supra* at ¶19) and the inaccurate citation to the Fourteenth Amendment, Anthony provided no meaningful argument or citation to relevant authorities to support and develop his issues on appeal. *See* M.R.A.P. 28(a)(7); *see also Carter v. Carter*, 324 So. 3d 327, 334 (¶29) (Miss. Ct. App. 2021) (holding that an appeal failed to comply with Rule 28, "which procedurally bars the appeal because appellant failed to provide caselaw and sufficient reasons to support the arguments").

¶22. The Mississippi Supreme Court has stated, "[I]ssues cannot be decided based on assertions from the briefs alone. The issues must be supported and proved by the record." *Patton v. State*, 109 So. 3d 66, 75 (¶22) (Miss. 2012). The appellant must support his argument "**with reasons and authorities**." *Id.* (emphasis added). This "is part of an appellant's burden on appeal." *Id.* Moreover, "[i]n the **absence of meaningful argument and citation of authority**, [appellate courts] generally will not consider the assignment of

8

error." *Id.* (emphasis added); *see also Siggers v. State*, 342 So. 3d 1213, 1218 (¶16) (Miss. Ct. App. 2022) (quoting *Stewart v. State*, 291 So. 3d 738, 748 (¶39) (Miss. 2020)).

¶23.   It is impossible to discern exactly what issues Anthony raises because of his failure to cite legal authority and his failure to make meaningful arguments. For example, he asked the chancery court to "investigate" numerous alleged criminal activities, but those arguments are factually nonsensical and make no legal sense. At one point he alleged the violation of an "order of extradition" but again cited no legal authority or provided any meaningful argument. It is hard to determine how a criminal "extradition" can start in chancery court or how that court violated such an order. As a result of a complete failure to abide by the Rules of Appellate Procedure by citing no relevant legal authority or providing any meaningful argument, we find Anthony's claim on appeal is procedurally barred.

## CONCLUSION

¶24.   Upon review of the record, this Court concludes that Mississippi Rule of Appellate Procedure 28(a)(7) procedurally bars the assignment of error on appeal because the appellant failed to cite relevant legal authority and failed to provide meaningful legal arguments. It is impossible for this Court to understand the exact legal errors he alleged were committed by the chancery court since he included no relevant authority, no meaningful arguments, and no references to the record. Therefore, as a result of the procedural bars already referenced and the inability of this Court to decipher Anthony's arguments on appeal, the judgment of the chancery court is affirmed.

¶25.   **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, McDONALD, McCARTY, SMITH AND EMFINGER, JJ., CONCUR. WESTBROOKS, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**