GRIFFIS, P.J., FOR THE COURT:
¶ 1. Kendrick Casey was convicted of aggravated assault and armed robbery. He was sentenced as a habitual offender to life in the custody of the Mississippi Department of Corrections (MDOC) on both counts, with the sentences to run concurrently. On appeal, he claims the trial court erred in denying his motion for a continuance on the morning of trial, and in not issuing subpoenas instanter for two witnesses Casey claimed were avoiding service of earlier subpoenas. We find no error and affirm.
FACTS AND PROCEDURAL HISTORY
¶ 2. On the evening of February 5, 2013, a Harrison County Sheriff's deputy encountered a disoriented and injured Johnny *598 Ray Holmes kneeling by a building. The deputy discovered that Holmes had been shot and robbed of prescription drugs during an altercation in a vehicle driven by Jonathan Young. Holmes could not identify who shot him, as the person had attacked him from the backseat of Young's vehicle. Young later identified Casey as the third person in the car. Young said that he and Holmes had arranged to meet so Young could buy prescription drugs (Oxycodone) for his friend Jessica Orr and her boyfriend Casey. When Holmes got into Young's car, Casey grabbed Holmes from behind, demanded the drugs, and hit Holmes over the head with a gun. In the process of handing over the pills, Holmes and Casey fought over the gun, and Holmes was shot. Holmes jumped from the parked vehicle and crawled to a nearby building while Young and Casey drove off. No weapon was recovered.
¶ 3. Casey and Young were indicted on December 23, 2013, for one count of aggravated assault and one count of armed robbery. In exchange for pleading guilty to accessory after the fact to aggravated assault and having the armed-robbery charge passed to the files, Young testified against Casey. During pretrial proceedings, the trial court granted Casey's three separate motions for a continuance, mainly due to issues with his representation.
¶ 4. On July 7, 2015, Casey's new defense counsel filed a notice of alibi, asserting that Casey was with Orr at the time the crime occurred. A July 9, 2015, supplement to the notice of alibi further stated that Orr's mother, Annette Newsome, would testify that she saw Orr and Casey late that evening at her home. At a hearing on July 13, 2015, defense counsel moved for a fourth continuance, stating more time was needed to serve subpoenas to alibi witnesses, particularly Orr and Newsome. Counsel noted it had been "difficult ... to get Ms. Newsome served with a subpoena" and said: "[W]e've done everything in due diligence to get these witnesses." The court granted the motion, and the case was continued for two months.
¶ 5. On September 9, 2015, defense counsel notified the trial court that he had not been able to locate Orr or Newsome for service of the subpoenas. Orr had become a "hostile witness" and was "not responding to anything that [counsel had] done to try to get her to come in to state where she was on that night with [Casey]." A private investigator, Edwin Seward, had been hired to find Orr, and counsel informed the judge:
[W]e still can't locate [Orr]. Judge, we believe we found her, but ... whenever she answers her phone [and we say] we're looking for [Orr], she says it's not her and whatever. We've actually got now a subpoena to go out to her for court next week, and we have one of Mr. Casey's family members who knows what she looks like so we can [e]nsure that we serve her.... This woman is hostile to the defense.... [S]he has rejected every phone call and every overture that I've [made] to get her to come in.
However, neither Orr nor Newsome were located and served with a subpoena. On September 14, at a pretrial hearing, the trial court reserved ruling on the State's motion in limine regarding several of the alibi witnesses, and with regard to Orr, stated: "If Ms. Orr shows up, then we will revisit the whole issue outside the presence of the jury.... I'm going to wait to see, whether she even testifies and if so, what she says." Defense counsel responded that the trial court's approach was "fair." Counsel informed the court that Seward would be available the next day to "reurge our motion for a continuance ...
*599 because of the efforts of two people to avoid process to become a witness."
¶ 6. Defense counsel moved for a fifth continuance on the following day (September 15) and requested the court to issue an "instanter warrant" for Orr and Newsome. Seward testified that he had attempted to serve Orr and Newsome with subpoenas for over three months but had been unable to contact them. The Sunday before the trial, Seward went to another address and was told by a woman, whom he later discovered was Orr, that she would not accept anything, and she cursed at him. Seward said he was informed by Casey's mother that morning that Orr and Newsome were intentionally avoiding service of the subpoenas.
¶ 7. The trial judge denied the motion for a continuance, noting that he had "already granted a lengthy continuance in the case." He also denied the request to issue an "instanter warrant" based on his reasoning that "there's been nothing brought before the [c]ourt by way of motion prior to today to ask the [c]ourt for assistance in serving these alleged witnesses." The trial proceeded.
¶ 8. Holmes testified that he randomly encountered Young as he was walking to the store and asked for a ride. It was at that point that he was attacked and shot, but he could not identify the assailant. Young testified to a slightly different set of facts. Young said he had been helping Newsome with some errands that afternoon, and he encountered Orr and Casey that evening at Newsome's home. Young, a known drug addict, claimed Orr and Casey asked him to obtain some prescription drugs for them; so he contacted Holmes and arranged a meeting. Holmes wanted Young to come alone, but Casey insisted on coming; so Young told Casey to hide in the back seat. He identified Casey as the person who shot Holmes.
¶ 9. Casey was found guilty of both counts. The trial court sentenced Casey as a habitual offender to life in the custody of the MDOC for each count, with the sentences to run concurrently. See Miss. Code Ann. § 99-19-83 (Rev. 2015). Casey filed a motion for a judgment notwithstanding the verdict, and a hearing was held. Among his numerous assignments of error, he argued that the court "erred by not granting a continuance as requested by the defendant due to our inability to locate two material witnesses who clearly were dodging [the] process server." The trial court denied the motion but did not make any specific findings regarding the issue of the motion for a continuance. Aggrieved, Casey now appeals the trial court's denial of his motion for a continuance and his request to issue subpoenas instanter.
DISCUSSION
1. Motion for Continuance
¶ 10. The first issue is whether the trial court erred in denying Casey's motion for a continuance. "[T]he granting of a continuance is largely within the sound discretion of the trial court, and a judgment will not be reversed because the continuance is refused unless there has been an abuse of [that] sound discretion." Hardiman v. State , 776 So.2d 723, 727 (¶ 19) (Miss. Ct. App. 2000) (citations omitted). Considering the four continuances granted by the trial court prior to trial, including the two-month continuance granted in July 2015, we can find no abuse of discretion in the trial court's denial of Casey's motion for a continuance on the morning of trial.
2. Subpoena Instanter
¶ 11. With regard to the second issue-the trial court's refusal to issue subpoenas instanter for Orr and Newsome-Casey *600 contends that "[e]ven if the court was reluctant to grant a continuance, there was no reason why the court should not have honored [his] request to have the sheriff go and get the witnesses so that they could appear at trial." In this instance, we agree. "Few rights are more fundamental than that of an accused to present witnesses in his own defense." Chambers v. Mississippi , 410 U.S. 284, 302, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). In Patton v. State , 109 So.3d 66, 79 (¶ 39) (Miss. 2012), the Mississippi Supreme Court summarized:
The Sixth Amendment affords a defendant the right to have compulsory service for obtaining witnesses in his favor. The Mississippi Constitution mirrors this right by allowing the accused to obtain witnesses in his favor. States cannot arbitrarily deny a defendant the right to put on the stand a witness whose testimony would have been relevant and material to the defense. However, the right to compulsory process is not absolute. We have held that a defendant does not have a constitutional right to subpoena anyone or anything he pleases. Additionally, we have recognized that "the right to call witnesses is limited to relevant and material testimony. The burden is on the defendant to demonstrate a "colorable need" for the witness.
(Internal citations omitted).[1]
¶ 12. Here, the trial court denied Casey's ore tenus motion for subpoenas instanter on the grounds that two of his alibi witnesses, Newsome and Orr, had been avoiding service of process. When the trial court ruled on this matter, it held:
[T]he defense has certainly shown that they have made efforts to contact Ms. Orr and Ms. Newsome. My problem with the case is-I mean with the motion is that this case was set for trial back on the [c]ourt's July docket, and when it was called for trial[,] the defense made a motion for a continuance at that time saying that they had not been able to make contact with some of their witnesses[,] and they felt that they knew where they were and that they would be contacting them within a few days. And defense counsel asked the [c]ourt for a continuance of a week, which I thought was very reasonable and I was ready to grant that[,] and then found out that the case could not be tried on my docket that next week. So I, in fact, granted [the] defense a two-month continuance, not a two-week continuance, because this was going to be the first time I would be available back here in Gulfport for the trial.
So I feel that in spite of the effort[s] that have been made, the [c]ourt [has] already granted a lengthy continuance in the case. And the-there's been nothing brought before the [c]ourt by way of motion prior to today to ask the [c]ourt for assistance in serving these alleged witnesses. So I'm going to deny the motion for a continuance and the bench warrant.
¶ 13. In Pilgrim v. State , 19 So.3d 148, 153 (¶ 15) (Miss. Ct. App. 2009), this Court held that "reversal on the grounds of a trial court's denial of a motion for continuance requires a showing that the trial court's decision resulted in a manifest injustice." Here, no manifest injustice has *601 been demonstrated. At the July 15, 2015 hearing, Casey's counsel assured the trial court that he had found Orr and Newsome. Counsel then said:
That leads me, your Honor, to my motion for continuance. All I'm asking for, judge, is one week. One week. Move us to next Monday, Judge, and we'll be ready to go to trial.
....
Judge, we've done everything in due diligence to get these witnesses. We're close to getting them. All I'm asking for, your Honor, is one week.
The continuance was granted, and the trial did not begin until two months later on September 15th. The trial judge then ruled:
So I feel that in spite of the effort[s] that have been made, the [c]ourt's already granted a lengthy continuance in the case. And the-there's been nothing brought before the [c]ourt by way of motion prior to today to ask the [c]ourt for assistance in serving these alleged witnesses. So I'm going to deny the motion for a continuance and the bench warrant.
(Emphasis added).
¶ 14. There were at least four continuances granted over a two-year period. A continuance was granted on July 16, 2014, and the case was set for trial on November 3, 2014. Then, the case was reset for trial on January 5, 2015. On March 2, 2015, Casey's request for a continuance was granted, and the case was reset for June 22, 2015. On June 22, 2015, Casey received another continuance, and the case was reset for July 13, 2015. On July 13, 2015, Casey asked for another continuance, and the case was set for trial in September.
¶ 15. Throughout these continuances, Casey identified an issue with finding Orr and Newsome. At one point, Casey indicated they had been found or would be found a short time later. The trial judge did not arbitrarily refuse to issue the subpoenas instanter. Instead, the trial judge clearly considered Casey's representations and the fact that Casey had several months to bring any issues to the court's attention to ensure the September trial went forward.
¶ 16. We do not find that the trial judge abused his broad discretionary powers in failing to grant yet another continuance. Indeed, there is nothing in this record demonstrating that the denial of a last-minute continuance after the seating of the jury resulted in a "manifest injustice" to Casey personally or to our present system of criminal justice. The supreme court has held that trial judges have broad discretionary powers in granting or refusing to grant a continuance. Pauley v. State , 113 So.3d 557, 561 (¶ 7) (Miss. 2013).
¶ 17. As to the question of whether the trial court erred by denying the request for subpoenas instanter, the record indicates that throughout the discussion of this case, Casey's counsel voiced his concerns about locating Orr and Newsome so they could appear and testify. The trial court did not deny Casey's right to have compulsory process to obtain witnesses in his favor; instead, the trial court denied the request because this issue had been identified for months, and Casey's counsel previously had assured the court that they would appear. Then, with a two-month continuance, Casey's counsel did not ask the court to address this issue in advance but waited until after the jury was selected to bring it to the court's attention. We find no error by the trial court.
¶ 18. We find no Mississippi case that requires the trial court to issue subpoenas instanter to preserve the defendant's Sixth Amendment right to compulsory process, especially when the issue was addressed by the court for months. It is clear that the *602 trial judge believed this matter should have been addressed at the fourth continuance, which occurred two months before the scheduled trial. We find no error and affirm.
¶ 19. AFFIRMED.
LEE, C.J., CARLTON, WILSON, GREENLEE AND TINDELL, JJ., CONCUR. BARNES, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY IRVING, P.J., FAIR AND WESTBROOKS, JJ.
¶ 20. While I agree with the majority that the trial court did not err in denying Casey's motion for a continuance, I find the court's denial of his request to issue subpoenas instanter for two witnesses constitutes reversible error, and I would reverse and remand for a new trial.
¶ 21. As the majority notes, there is no Mississippi case requiring a trial court to issue a subpoena instanter to preserve a defendant's right to compulsory process. But the Mississippi Supreme Court has held that a trial court's failure to do so warrants a finding of reversible error when it affects a defendant's due-process right to a defense. In Hentz v. State , 542 So.2d 914, 915 (Miss. 1989), the trial court quashed subpoenas for several witnesses, as the defendant "had not established that the witnesses' testimony would be material and beneficial." The supreme court reversed and remanded for a new trial, concluding:
[Larry] Hentz'[s] defenses were entrapment and duress. Hentz'[s] "proffer" regarding the [witnesses] suggests that they had relevant and material knowledge, at least on the issue of duress. Their testimony was vital because without it Hentz had no defense. While Hentz'[s] proffer should have been more detailed, denial of any defense whatsoever cannot be ignored. Due process requires that a criminal defendant be allowed the opportunity to defend himself. Having made a sufficient showing of colorable need in relation to [the witnesses], Hentz'[s] right to compulsory process, guaranteed by Section 23 of the Mississippi Constitution and the Sixth Amendment to the United States Constitution, was violated. We have no alternative but to reverse and remand for a new trial.
Id. at 917 (emphasis added).
¶ 22. In United States v. Moudy , 462 F.2d 694, 696-97 (5th Cir. 1972), the United States Court of Appeals for the Fifth Circuit determined that a trial court committed reversible error in denying a defendant's request for a subpoena the day before trial for a psychiatrist who had examined the defendant.
In 1966[, Federal Rule of Civil Procedure 17(b) ] was amended to make issuance [of a subpoena] mandatory upon "a satisfactory showing that the presence of the witness is necessary to an adequate defense." That requirement leaves broad discretion in the district court by allowing the trial judge to weigh numerous factors, including materiality, relevancy, and competency, in deciding whether to grant the request for a subpoena.
....
It does not appear from anything in the record that the request was frivolous or the averments untrue. Such testimony would have been material and relevant to the only factual question really in issue.... It is true that the motion for a subpoena addressed to Dr. Murney was filed the day before trial, which is a late hour.... Last minute tactics designed to bring the trial process to a halt are not to be countenanced, but considering *603 the court's awareness of appellant's previous unsuccessful attempt to secure a subpoena for an expert to testify regarding his sanity and the apparent relevance of the desired witness' [s ] testimony, and considering also that the record does not demonstrate that in fact the trial would have been delayed, we conclude that the need for Dr. Murney's presence was sufficient to render the court's refusal to issue a subpoena for him reversibly erroneous.
Id. at 697-98 (emphasis added) (internal citations omitted).
¶ 23. Similarly, the trial court here was well aware of Casey's attempts to serve a subpoena on the two witnesses, acknowledging that "the defense has certainly shown that they have made efforts to contact Ms. Orr and Ms. Newsome." Two months before trial, defense counsel informed the trial court and the State that Orr and Newsome may have information, which would provide an alibi defense for Casey. At the July 13, 2015 hearing, defense counsel argued to the court: "I found two witnesses, and Annette Newsome, who should be able, if they told the truth, are going to say that some time between 10:15, 10:30, quarter to 11, Mr. Casey [and] Jessica Orr went to Annette Newsome's house. They were there a period of time." On the morning of trial, the investigator told the court that issuing a warrant was the "only way you're going to get those two." Seward had attempted for three months to find them, stating that they were the "hardest that I've ever tried to serve." It was apparent that neither woman was going to testify voluntarily, and their presence would need to be compelled.
¶ 24. Therefore, despite the "late hour" of Casey's request for the subpoenas, as in Hentz and Moudy , I find that Casey articulated a "colorable need" for the witnesses' testimonies, and the record reflects they had "relevant and material knowledge" of the events of that evening.[2] Moreover, nothing indicates that the trial would have been delayed by the court's issuance of subpoenas for their appearance-the trial lasted three days. See Rogers v. State , 891 So.2d 268, 273-74 (¶¶ 26-28) (Miss. Ct. App. 2004) (affirming the trial court's denial of a defendant's motion for a continuance but noting that the trial court "assisted" the defendant by issuing subpoenas instanter during the trial for witnesses the defendant alleged would testify on his behalf.). Here, there is no reason for the trial court's refusal to grant Casey's request for the subpoenas. If the women were not served in time for them to appear as witnesses, the trial would continue without them.
¶ 25. In Washington v. Texas , 388 U.S. 14, 19, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967), the United States Supreme Court declared:
The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, *604 he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.
"A corollary to the accused's right to compulsory process is the court's obligation to ensure ... that right is not violated for procedurally pretextual reasons." McTerry v. State , 680 So.2d 953, 955 (Ala. Crim. App. 1996). In light of Casey's Sixth Amendment right to compulsory process, and his diligent, yet unsuccessful, effort to obtain material witnesses for his defense, I find the trial court's denial of Casey's request to issue subpoenas instanter for Orr and Newsome was an abuse of discretion and a violation of Casey's right to present a defense.
¶ 26. Accordingly, I would reverse the judgment of convictions and remand for a new trial with Casey assisted by the compulsory process of the court.
IRVING, P.J., FAIR AND WESTBROOKS, JJ., JOIN THIS OPINION.

The trial court in Patton actually granted the defendant's request for a subpoena but dismissed the witness after the defendant failed to articulate a colorable need for his testimony. Id. at 73 (¶¶ 11-12). The supreme court upheld the court's decision, finding Edgar Patton had "failed to demonstrate that [the witness's] anticipated testimony was relevant and material to [his] defense." Id. at 79-80 (¶ 40).

While not known by the trial court when he ruled on Casey's motions, the trial testimony reflects the two women were involved to some degree in the events that transpired that evening. Holmes, the victim, testified that Newsome was his cousin, that he knew Young from seeing him at Newsome's home, and that Orr and Young were friends. Young corroborated this testimony, stating that he was buying the drugs for Orr and Casey; he had "run into them" at Newsome's home that evening. He had been driving Newsome around that afternoon, helping her with errands.